522 A.2d 1348

Jerome Edwin CHASE

v.

STATE of Maryland.

No. 114, Sept. Term, 1986.

Court of Appeals of Maryland.

April 3, 1987.

John L. Kopolow, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., on the brief), Baltimore, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Associate Judge of the Court of Appeals of Maryland (retired), Specially Assigned.

ORTH, Judge.

The saga of the current travails of Jerome Edwin Chase began when he pled guilty to robbery in the Circuit Court for Prince George's County. He was sentenced to imprisonment for a term of 10 years. The execution of all but 55 days of the sentence was suspended, and he was placed upon conditional probation for a period of five years.

Apparently Chase was not impressed by his good fortune in escaping a lengthy incarceration. A year later he was found to have violated certain conditions of his probation. The court "reimposed" the 10 year sentence, gave credit for 250 days served, and again suspended execution of the balance in favor of probation for five years. One of the conditions of this grant of probation was that he "obey all laws." Chase was still not convinced that he should abide by the conditions upon which he was permitted to stay out of jail nor did he attempt to become a respectable member

of society. Less than a year later, he tempted fate again. He was observed by two police officers in an area of considerable narcotic trafficking engaged in what they believed to be a drug transaction. They arrested him and searched him incident to the arrest. Their belief proved to be correct. They seized from his person marijuana, drug paraphernalia and a substantial amount of cash. He was charged with violations of the Controlled Dangerous Substances Act. Chase filed a motion in the criminal cause against him to suppress the evidence seized from him. The court conducted a plenary hearing and granted the motion. It found that the officers did not have probable cause to arrest Chase. Therefore, the warrantless arrest was illegal and the search and seizure incident thereto was repugnant to the Fourth Amendment to the Constitution of the United States as unreasonable. The exclusionary rule applied to exclude the evidence from the prosecution's case-in-chief at a criminal trial on the merits. The State, in light of this ruling, nol prossed the charges.

In the meantime the State had filed a petition to revoke his probation for failure to comply with the condition that he "obey all laws," in that he possessed marijuana and narcotic paraphernalia. It pursued the petition. Chase asked the court "whether or not [it] will consider the evidence seized at the time of [Chase's] arrest as the basis of violation of [Chase's] probation." The court treated this question as a motion to dismiss grounded on the claim that the challenged evidence was inadmissible at the revocation hearing. The court denied the motion on the basis that the exclusionary rule did not apply, in the circumstances, to bar the evidence at Chase's revocation of probation hearing. Upon that ruling, Chase ultimately conceded that he had possessed marijuana. The court revoked his probation and the suspension of the execution of the 10 year sentence, suspended all but four years of it, gave credit for 580 days of previous incarceration and placed him once more on conditional probation for a period of five years commencing upon his release from prison. Chase appealed. The Court of Special Appeals affirmed the judgment except as to the

length of the probationary period, which it ordered be reduced by 408 days, representing probationary time already served. *Chase v. State*, 68 Md.App. 413, 511 A.2d 1128 (1986).

We granted Chase's petition for a writ of certiorari and our order for the issuance of the writ accepted the two questions presented by Chase:

1) Is evidence that police have seized without a warrant and in violation of [Chase's] Fourth Amendment rights admissible to prove that he violated a condition of his probation?

2) Must the record of [Chase's] violation hearing show either that he was present and contested the charges or that he knowingly and voluntarily waived his rights to be present and to contest the charges?

I

The violation of probation hearing consisted of two phases, conducted about three months apart. The first phase dealt with the matter of the admissibility, at the hearing on the merits of the revocation of probation, of the evidence seized from Chase incident to his arrest. This evidence was the foundation of the State's case, but, as we have seen, it had been suppressed with respect to the criminal cause. The transcript of the suppression phase of the revocation hearing shows that when the case was called, defense counsel informed the court that Chase was "in the lock-up." The prosecutor thereupon introduced himself to the court, and the transcript immediately thereafter reads, "(Defendant present)." Defense counsel suggested that the evidence adduced at the suppression hearing in the criminal cause surrounding the arrest of Chase be entered in the revocation hearing by way of stipulation. The following stipulation was proffered by the State:

If we were to actually present evidence at this hearing the State would show that Private Andrew Pappas and Private Anderson, who is present in the courtroom, on January the 9th, 1985, were in the 7300 block of Haw-

thorne Street in Landover, Prince George's County, Maryland, when they saw the Defendant apparently signal to a passing motorist, who stopped his car. They saw apparently something exchanged between the Defendant, who pulled something out of his glove and gave it to a person in the car. The person in the car gave something back to him.

Given the nature of the area, that has a high volume of drug transactions that occur in exactly the same manner, they felt that they had just witnessed a drug transaction and decided to apprehend the Defendant.

Both officers did apprehend the Defendant. They conducted a search of the Defendant and recovered from him one plastic bag containing 58.6 grams of marijuana; three manila coin envelopes each containing a quantity, a small quantity of marijuana; and ... 125 small empty manila envelopes, and $171 in U.S. currency.

It was further proffered that

Officer Anderson did not know the Defendant, Jerome Edwin Chase, Jr., prior to this time. He had no knowledge at the time of the apprehension that he was on probation.

In fact, the reason for the apprehension was in order to prosecute him for what they believed to be a drug violation at that point in time.

Defense counsel expressly agreed to the stipulation and it was accepted by the court. It appears that the stipulation was in accord with the evidence adduced at the suppression hearing in the criminal cause. It was on that evidence that the court ruled that the articles seized from Chase were not admissible to prove the criminal charges against him, prompting the State to enter a nolle prosequi to all criminal charges. At the revocation suppression hearing, counsel argued whether the evidence seized from Chase incident to his arrest was admissible to establish that he had violated a condition of his probation. After due consideration, the court ruled that it was admissible.

Following the ruling of the court, the revocation action came on for hearing on the merits. It is at this adjudicatory phase of the revocation hearing that the record is deficient. When the case was called for trial, Gregory Powell, Esq., informed the court that he was "standing in" for the defense counsel who was trying a case elsewhere. Powell said that he was ready to proceed and that Chase was "in the lock-up." The court asked: "He's coming around?" The Deputy Clerk of the court answered: "Yes, I called for him." There immediately follows in the transcript a question by the court:

All right, Mr. Powell, you admit or deny the allegations in the petition for violation of probation?.

There is no indication in the transcript whether Chase was present in the courtroom when the court asked that question and Powell answered, or how much time elapsed between the clerk's statement that he had called for Chase to be brought from the lock-up and what thereafter followed. Powell answered the court's question:

For the record, we would like to preserve the right to appeal. We would deny any violation. But I believe we previously stipulated to the facts of the alleged violation. And basically that was, Your Honor, was that we agreed if there had been testimony presented in this case, the police officer would have provided the same testimony that he presented at the suppression hearing.

And, also, Your Honor, in light of the fact that there is a drug report in the underlying case reflecting that the material seized from Mr. Chase was, in fact, marijuana, we would stipulate that there was marijuana taken from Mr. Chase.

The court said: "Based upon that evidence, I am going to find the defendant in violation of probation." Defense counsel and the prosecutor entered into a discussion with the court concerning the disposition to be made of Chase. It was at the end of this discussion that the presence of Chase is affirmatively shown by the transcript. The court addressed Chase: "Mr. Chase, do you have anything you wish to tell me?" The transcript reads: "The Defendant:

No, sir Your Honor." The court announced its disposition and informed Chase that he had "a right to appeal this judgment of guilt in 30 days; ask me to reconsider it in 90 days." According to the transcript the case was called at 9:45 a.m. and the proceedings concluded at 9:55 a.m.

No one, including Chase and his counsel, have at any time suggested that Chase was in fact not present when the hearing went forward. Chase's complaint is simply that the record does not reflect that he was present at all times. We know that Chase was in the courthouse lock-up awaiting the calling of his case and was readily available. We know that the Clerk had "called for him." We know that he was brought to the courtroom. What we do not know from the record is precisely when during the ten minutes it took to dispose of the case he appeared. It stretches credibility to believe that the hearing would have proceeded in the absence of the defendant, particularly after the judge had asked if he was present, without some indication by the court, defense counsel or the prosecutor that Chase was not in court. We are not willing to assume that judges will knowingly not fulfill their sworn obligations, but it is an assumed proposition that "judges are men of discernment, learned and experienced in the law ..." and that the application of this proposition in the performance of their duties "lies at the very core of our judicial system." *State v. Babb,* 258 Md. 547, 550, 267 A.2d 190 (1970). *See State v. Hutchinson,* 260 Md. 227, 236–237, 271 A.2d 641 (1970). But, although the probability is that Chase had appeared before the court asked defense counsel whether the charges were admitted or denied and that the reporter had inadvertently neglected to include in the record those magic words, "Defendant present," it is possible, no matter how unlikely in the circumstances, that Chase was not then present. Of course, he was entitled to be present, as a part of the minimal due process applicable to probation revocation proceedings. *See Morrissey v. Brewer,* 408 U.S. 471, 488–489, 92 S.Ct. 2593, 2603–04, 33 L.Ed.2d 484 (1972). So we shall assume that Chase was not present until the

transcript reveals that his presence was recognized, and we look at what occurred during the interim.

There were no witnesses called. Evidence was presented by stipulation at the suggestion of defense counsel. It was at the express suggestion of defense counsel that the evidence offered by stipulation in the revocation suppression hearing be accepted in the hearing on the merits. It will be recalled that this was the same evidence adduced at the suppression hearing in the criminal cause in the presence of Chase and received at the suppression hearing in the revocation proceedings in the presence of Chase without objection by him. We note that during the suppression phase of the revocation hearing, Chase conceded that he possessed marijuana when arrested. The strategy of the defense at the hearing on the merits was clear. In the words of defense counsel, "We would like to preserve the right to appeal" the ruling that the evidence seized incident to an illegal arrest was admissible to establish the violation of a condition of probation. Whether or not that evidence was admissible was the only concern of the defense. The State was content to abide by the ruling that the search and seizure were illegal, and, of course, Chase was happy with that ruling. In no event was Chase in a position to refute successfully that he had been arrested, possessed marijuana and paraphernalia and charged with a crime. If the contraband seized was admissible at his revocation hearing, it would establish that he had not "obeyed" the law; if it were inadmissible the charge apparently could not be proved. The tactics to accomplish the strategy were to deny the violation but to stipulate the facts which Chase had twice before conceded rather than expend time and money by requiring the State to prove the charge by the introduction of testimonial and physical evidence which the defense realistically could not refute. The denial of the violation was simply to preserve the appeal on the vital question, and the tactics employed accomplished that strategic objective. What was done in Chase's assumed absence did not prejudice him one whit. Furthermore, it will be recalled, when the judge asked Chase toward the end of the hearing, "do

you have anything you wish to tell me," Chase answered "no." There was no indication that Chase was not aware of what had previously occurred, no intimation that he had actually not been present at all times, and no objection of any kind.

In *Williams v. State*, 292 Md. 201, 438 A.2d 1301 (1981), we modified prospectively the Maryland common law rule of the defendant's right to be present in a criminal trial. We explained:

Today, with the complexity of many criminal trials and the absolute right of counsel if there is a danger of incarceration, our system proceeds upon the assumption that it is primarily counsel's function to assert or waive most "rights" of the defendant. Unless a defendant speaks out, normally he must be bound by the trial decisions, actions and inactions of counsel. Otherwise, the system simply would not work. *Id.* at 218, 438 A.2d 1301.

We concluded:

With respect to all criminal trials, or parts of trials, taking place after the issuance of our mandate in this case, an effective waiver of the defendant's right to be present at every stage of the trial will not always require a personal waiver by the defendant. Where the right of confrontation is not implicated, and where there is involved no other right requiring intelligent and knowing action by the defendant himself for an effective waiver, a defendant will ordinarily be bound by the action or inaction of his attorney.

\* \* \* \* \* \*

[I]f the defendant himself does not affirmatively ask to be present at such occurrences or does not express an objection at the time, and if his attorney consents to his absence or says nothing regarding the matter, the right to be present will be deemed to have been waived. *Id.* at 219–220, 438 A.2d 1301.

*Cf. State v. Magwood*, 290 Md. 615, 432 A.2d 446 (1981).

We think that the teachings of *Williams* are equally applicable to a revocation of probation hearing, which does

not require the full panoply of rights and safeguards associated with a criminal trial. *See Black v. Romano,* 471 U.S. 606, 105 S.Ct. 2254, 2259, 85 L.Ed.2d 636 (1985).

On the particular circumstances of the instant case, we agree with the Court of Special Appeals, that "[o]n the record, we cannot find any basis for concluding that, to the extent [Chase] was, in fact, not present, his right of presence was not effectively waived." *Chase v. State,* 68 Md.App. at 418, 511 A.2d 1128. As the Court of Special Appeals explained:

> [Chase's] right of confrontation was certainly not transgressed, for no witnesses testified against him. It had already been determined that the evidence taken from him was admissible, and the most damaging thing that occurred was his counsel's stipulation that the substance seized was, in fact, marijuana. But that was never in dispute; indeed at the [previous] hearing, [Chase] stipulated that a bag containing 58.6 grams of marijuana had been seized. *Id.* at 417–418, 511 A.2d 1128.

If Chase was not in fact present at the commencement of the proceedings, counsel made no objection then or later. The record is clear that Chase was not absent during the entire hearing, and when he was given the opportunity to speak, he made no objection regarding any lack of presence on his part or to any action by his counsel. "There is no war between the Constitution and common sense." *Mapp v. Ohio,* 367 U.S. 643, 657, 81 S.Ct. 1684, 1692, 6 L.Ed.2d 1081 (1961). In the circumstances here, the Constitution and common sense are not in conflict.

■ We have an alternative reason for holding that to the extent Chase was not present at the adjudicatory phase of his revocation hearing, his absence does not require reversal of the judgment. In *Noble v. State,* 293 Md. 549, 446 A.2d 844 (1982), we laid to rest the notion that a violation of the right to be present during a stage of a criminal trial can never be harmless. In doing so we overruled *State v. Saul,* 258 Md. 100, 265 A.2d 178 (1970) and disapproved *Young v.*

*State,* 5 Md.App. 383, 247 A.2d 751 (1968). *Noble v. State,* 293 Md. at 569, 446 A.2d 844. We held flatly that

> the harmless error principle is fully applicable to a defendant's right to be present during a stage of the trial. Prejudice will not be conclusively presumed. If the record demonstrates beyond a reasonable doubt that the denial of the right could not have prejudiced the defendant, the error will not result in a reversal of his conviction. *Id.* at 568–569, 446 A.2d 844.

This teaching is also equally applicable to the presence of a respondent at a revocation of probation hearing. The harmless error principle is set out in *Dorsey v. State,* 276 Md. 638, 659, 350 A.2d 665 (1976):

> [W]hen an appellant, in a criminal case, establishes error, unless a reviewing court, upon its own independent review of the record, is able to declare a belief, beyond a reasonable doubt, that the error in no way influenced the verdict, such error cannot be deemed "harmless" and a reversal is mandated.

We have made our own independent review of the entire record. In light of the way in which the defense chose to proceed with its case and the reason for proceeding in that manner as shown by the record, we are convinced beyond any reasonable doubt that Chase's absence in no way influenced the verdict. As we pointed out above, Chase was not prejudiced one whit if he were not present under the circumstances. As we are satisfied beyond a reasonable doubt that, to the extent he was not present at the hearing, he was not harmed thereby, the error may be deemed harmless under *Dorsey.* We so deem it.

It follows from all of what we have said that, to the extent Chase may not have been present at the revocation of probation hearing, his absence does not require a reversal of the judgment.

## II

■■■■ In Maryland, the revocation of probation is considered to be a civil proceeding.[1] Chief Judge Murphy, speaking for the Court in *Howlett v. State*, 295 Md. 419, 456 A.2d 375 (1983), described a probation revocation proceeding thus:

> While a probation revocation proceeding relates directly to the criminal case of the substantive offense, the proceeding is not itself a new criminal prosecution; the commission of a crime is not charged and the alleged violation of probation, if established, is not punishable beyond the reimposition of the original sentence imposed. *Id.* at 424, 456 A.2d 375.

It may be that the nature of probation revocation procedures in Maryland is not quite as "flexible and informal" as the Supreme Court perceives such procedures to be generally. *Romano*, 471 U.S. at 613, 105 S.Ct. at 2259. See the description of a revocation hearing in *Gagnon v. Scarpelli*, 411 U.S. 778, 779, 93 S.Ct. 1756, 1758, 36 L.Ed.2d 656 (1973).[2] But even if we have gone beyond the constitutional requirements for the conduct of a revocation hearing,[3] it is

---

1. Suspension of the imposition or execution of sentence and the grant of conditional probation is authorized by Md.Code (1957, 1982 Repl. Vol., 1986 Cum.Supp.) Art. 27, § 641A.

 The statute is implemented by Md.Rule 4–346.

2. The Supreme Court sees no difference relevant to due process between the revocation of parole and the revocation of probation. *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) noted:

 > Despite the undoubted minor differences between probation and parole, the commentators have agreed that revocation of probation where sentence has been imposed previously is constitutionally indistinguishable from the revocation of parole. *Id.,* 411 U.S. at 782 n. 3, 93 S.Ct. at 1759 n. 3.

3. In Maryland, a charge that a probationer violated a condition of probation is tried before a judge. Rule 4–346(c) provides: "The hearing shall be held before the sentencing judge, whenever practicable." The charge is prosecuted by a State's Attorney.

 Since the decision of the Court of Special Appeals in *Laquay v. State,* 16 Md.App. 709, 299 A.2d 527 (1973), the Office of the Public Defender has provided counsel to defend probationers who are indigent. *See State v. Bryan,* 284 Md. 152, 158 n. 5, 395 A.2d 475 (1978).

luminously clear that Maryland, like the Supreme Court, deems that a revocation of probation proceeding is not a stage of a criminal prosecution.[4] It is firmly established as a civil action, and, as we have noticed above, the probationer is not cloaked with the full panoply of constitutional rights and procedural safeguards enjoyed by a defendant in a criminal cause, "A person charged with a violation of probation is not, therefore, invested with all the rights constitutionally accruing to a defendant in a criminal prosecution and the hearing is not subject to all the limitations [and procedural safeguards] imposed by law upon a trial leading to conviction." *Howlett,* 295 Md. at 424, 456 A.2d 375; *Romano,* 471 U.S. at 613, 105 S.Ct. 2259; *Gagnon,* 411 U.S. at 778, 93 S.Ct. at 1756. For example, the admission of a violation of conditions of probation is not restricted as is the acceptance of a plea of guilty to a criminal charge. Rule 4–346(c) declares: "The provisions of Rule 4–242 [Pleas] do not apply to an admission of violation of conditions of probation." *See also Howlett v. State, supra.* A probationer is not entitled to a trial by jury. Moreover, the Supreme Court said in *Minnesota v. Murphy,* 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984):

> Just as there is no right to a jury trial before probation may be revoked, neither is the privilege against compelled self-incrimination available to a probationer. It follows that whether or not the answer to a question about a residential requirement is compelled by the threat of revocation, there can be no valid claim of the privilege on the ground that the information sought can be used in revocation proceedings.
>
> Our cases indicate, moreover, that a State may validly insist on answers to even incriminating questions and hence sensibly administer its probation system, as long as it recognizes that the required answers may not be used in a criminal proceeding and thus eliminates the threat of

---

**4.** The fact that the revocation of probation action is usually docketed in the underlying criminal cause does not indicate that the revocation action is criminal in nature. The use of the criminal docket is only a matter of convenience.

incrimination. Under such circumstances, a probationer's "right to immunity as a result of his compelled testimony would not be at stake," ... and nothing in the Federal constitution would prevent a State from revoking probation for a refusal to answer that violated an express condition of probation or from using the probationer's silence as "one of a number of factors to be considered by the finder of fact" in deciding whether other conditions of probation have been violated. *Id.* at 435 n. 7, 104 S.Ct. at 1146 n. 7.

The right of a probationer to confront the witnesses against him is not absolute. The right is lost if the hearing judge "specifically finds good cause for not allowing confrontation." *Gagnon,* 411 U.S. at 786, 93 S.Ct. at 1762 (quoting *Morrissey,* 408 U.S. at 489, 92 S.Ct. at 2604). *See State v. Fuller,* 308 Md. 547, 552, 520 A.2d 1315 (1987). In *Dean v. State,* 291 Md. 198, 202, 434 A.2d 552 (1981), after observing that "[t]he procedural protections afforded a probationer at a revocation of probation hearing are not equivalent to those accorded at a criminal trial," we said: "Formal procedures and the rules of evidence are not employed." We made a like statement in *State v. Fuller,* 308 Md. at 553, 520 A.2d 1315 (citing *Gagnon* as authority) and added that "reasonably reliable hearsay may be received." In *Fuller* at 552, 520 A.2d 1315, we noted that *Scott v. State,* 238 Md. 265, 208 A.2d 575 (1965), although "drastically weakened" had "not been completely overruled" by *Morrissey* and *Gagnon.* We said in *Scott,* 238 Md. at 276, 208 A.2d 575:

The facts presented to or coming to the knowledge of the judge, as to the breach of conditions of probation, need not establish guilt beyond a reasonable doubt as in criminal offenses; all that is required is that the facts before him be such that the judge reasonably could be satisfied that the conduct of the probationer has not been what he agreed it would be if he were given liberty.

We held that

acquittal of a probationer of a charge of criminal conduct which was a violation of probation does not preclude revocation of probation, if the judge passing on the question is with reason satisfied that the probationer actually

did that charged in the indictment on which he was acquitted. *Id.*

We see nothing in the decisions of the Supreme Court which undermines the viability of this part of *Scott.*[5]

Even though a revocation of probation proceeding is a civil action, it does result in a loss of liberty. *Gagnon,* 411 U.S. at 782, 93 S.Ct. at 1759. The deprivation of liberty is "not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions." *Morrissey,* 408 U.S. at 480, 92 S.Ct. at 2600. Both the probationer and the State have a vital interest. *Id.* The Court spoke to the interest of the probationer:

> [T]he liberty of a [probationer], although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a "grievous loss" on the [probationer] and often on others." *Id.* at 482, 92 S.Ct. at 2601.

It discussed the interest of the State and concluded:

> [T]he State has an overwhelming interest in being able to return an individual to imprisonment without the burden of a new adversary criminal trial if in fact he has failed to abide by the conditions of his [probation]. *Id.* at 483, 92 S.Ct. at 2601.

It follows that

> [t]he [probationer] is not the only one who has a stake in his conditional liberty. Society has a stake in whatever

---

5. *Scott v. State,* 238 Md. 265, 275, 208 A.2d 575 (1965), spoke of probation as "a matter of grace." *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 2601, 33 L.Ed.2d 484 (1972), observed: "It is hardly useful any longer to try to deal with [probation] in terms of whether the [probationer's] liberty is a 'right' or a 'privilege.'" *Gagnon v. Scarpelli,* 411 U.S. at 782 n. 4, 93 S.Ct. at 1760, n. 4, stated:

> It is clear at least after *Morrissey* ..., that a probationer can no longer be denied due process, in reliance on the dictum in *Escoe v. Zerbst,* 295 U.S. 490, 492, 55 S.Ct. 818, 819, 79 L.Ed. 1566 (1935) that probation is an "act of grace."

It is in this respect that *Scott* may be said to be "weakened."

may be the chance of restoring him to normal and useful life within the law. *Id.* at 483–484, 92 S.Ct. at 2601. Thus,

[b]y whatever name, the liberty [of the probationer] is valuable.... Its termination calls for some orderly procedure, however informal. *Id.* at 482, 92 S.Ct. at 2601.

The validity of the procedure called for is tested by "fundamental fairness—the touchstone of due process...." *Gagnon,* 411 U.S. at 790, 93 S.Ct. at 1763; *Howlett,* 295 Md. at 427, 456 A.2d 375; *State v. Bryan,* 284 Md. 152, 159 n. 6, 395 A.2d 475 (1978). This is so because since "the liberty [of the probationer] is valuable [it] must be seen as within the protection of the Fourteenth Amendment." *Morrissey,* 408 U.S. at 482, 92 S.Ct. at 2601.

The Fourteenth Amendment guarantees as to State prosecutions that no person shall be deprived of "life, liberty, or property, without due process of law." [6] "The Due Process Clause of the Fourteenth Amendment imposes procedural and substantive limits on the revocation of the conditional liberty created by probation." *Romano,* 471 U.S. at 610, 105 S.Ct. at 2257 (*citing Bearden v. Georgia,* 461 U.S. 660, 666 and n. 7, 103 S.Ct. 2064, 2069 and n. 7, 76 L.Ed.2d 221 (1983)). Inasmuch as it is clear that due process applies to revocation of probation proceedings, "the question remains what process is due." *Morrissey,* 408 U.S. at 481, 92 S.Ct. at 2600. The precise question before us is whether the admission at the adjudicatory phase of a revocation of probation hearing of evidence seized incident to an illegal arrest is fundamentally unfair and thereby offensive to due process of law. In considering the question, we are aware that the Supreme Court emphasized that

there is no thought to equate [the adjudicatory] stage of [probation] revocation to a criminal prosecution in any sense. It is a narrow inquiry; the process should be flexible enough to consider evidence including letters,

---

6. Due process of law is also encompassed in both Article Nineteen and Article Twenty-four of the Maryland Declaration of Rights. *See, e.g., Crawford v. State,* 285 Md. 431, 404 A.2d 244 (1979).

affidavits, and other material that would not be admissible in an adversary criminal trial.

* * * * * *

We have no thought to create an inflexible structure for [probation] revocation procedures. *Morrissey*, 408 U.S. at 489–490, 92 S.Ct. at 2604.

It follows that the mere fact that the evidence sought to be admitted at the revocation hearing was suppressed as illegally seized at the criminal trial of Chase provides, in itself, no sound reason to exclude it at his revocation hearing. Nor, as we have seen, does the fact that Chase was not convicted of the criminal charges arising from the evidence, render the evidence inadmissible at his revocation hearing. We are also mindful of the wide range of constitutional rights and procedural safeguards, listed *supra*, which are available to a defendant in a criminal cause but are denied a probationer in a revocation hearing without violating due process. This leads us to the bottom line, whether, for process to be due, the exclusionary rule adopted with respect to the search and seizure clause of the Fourth Amendment must be applied in revocation of probation hearings.

III

A

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...." U.S. Const. amend. IV.

It is a rule of the common law that the admissibility of evidence is not affected by the illegality of the means by which it is obtained. Despite indication in *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 535, 29 L.Ed. 746 (1886), that the use of evidence illegally obtained by federal officials was "unconstitutional," the rule was generally followed by the courts throughout the first decade of this century. Early in 1914, the Supreme Court decided *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652.

For the first time, the Court held that "in a federal prosecution the Fourth Amendment barred the use of evidence secured through an illegal search and seizure." *Wolf v. Colorado*, 338 U.S. 25, 28, 69 S.Ct. 1359, 1361, 93 L.Ed. 1782 (1949). The Court "has ever since required of federal law officers a strict adherence to that command. . . ." *Mapp v. Ohio*, 367 U.S. 643, 648, 81 S.Ct. 1684, 1,688, 6 L.Ed.2d 1081 (1961). Thirty-five years after *Weeks*, the Court, again for the first time, discussed the effect of the Fourth Amendment upon the states through the Fourteenth Amendment. But, although it declared that the guarantee of the Fourth Amendment was enforceable against the states through the due process clause and announced that it "stoutly adhere[d]" to the *Weeks* decision, the Court "decided that the *Weeks* exclusionary rule would not then be imposed upon the states as 'an essential ingredient of the right.' " *Mapp*, 367 U.S. at 650, 81 S.Ct. at 1689 (quoting *Wolf*, 338 U.S. at 29, 69 S.Ct. at 1362). In *Irvine v. California*, 347 U.S. 128, 139, 142, 149, 74 S.Ct. 381, 386, 388, 392, 98 L.Ed. 561 (1954), the Court expressed the hope that the states would adopt the federal exclusionary rule. But it took until 1961 for the Court to appreciate that its hope was largely unrealized. So it settled the issue itself. It flatly declared in *Mapp*, 367 U.S. at 655, 81 S.Ct. at 1691:

> We hold that all evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court.

In a revealing opinion in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Court discussed the exclusionary rule and a number of its decisions concerning it.[7] It laid to rest the notion that the exclusion-

---

7. The opinion of the Court was delivered by White, J., joined by Burger, C.J., Blackmun, Powell,, Rehnquist, and O'Connor, JJ. Blackmun, J., while joining the Court's opinion, filed a concurring opinion stating that the announced rule was provisional. Brennan, J., joined by Marshall, J., dissented on the ground that illegally obtained evidence is inadmissible by virtue of the Fourth Amendment. Stevens, J., dissented on the ground that there was no probable cause for the

ary rule is a necessary corollary of the Fourth Amendment or that the rule is required by the conjunction of the Fourth and Fifth Amendments. It said:

> The Fifth Amendment theory has not withstood critical analysis or the test of time ... and the Fourth Amendment "has never been interpreted to proscribe the introduction of illegally seized evidence in all proceedings or against all persons." *Id.* at 906, 104 S.Ct. at 3411 (quoting *Stone v. Powell,* 428 U.S. 465, 486, 96 S.Ct. 3037, 3048, 49 L.Ed.2d 1067 (1976)).

It declared:

> The Fourth Amendment contains no provision expressly precluding the use of evidence obtained in violation of its commands, and an examination of its origin and purposes makes clear that the use of fruits of a past unlawful search or seizure "works[s] no new Fourth Amendment wrong." *Leon* 468 U.S. at 906, 104 S.Ct. at 3411 (quoting *United States v. Calandra,* 414 U.S. 338, 354, 94 S.Ct. 613, 623, 38 L.Ed.2d 561 (1974)).

It explained, in the words of *Calandra,* at 348, 94 S.Ct. at 620, that

> [t]he rule thus operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." *Leon* 468 U.S. at 906, 104 S.Ct. at 3412.

It noted that its decisions made clear that whether the exclusionary sanction is appropriately imposed in a particular case is "an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police conduct." *Id.* (quoting *Illinois v. Gates,* 462 U.S. 213, 223, 103 S.Ct. 2317, 2324, 76 L.Ed.2d 527 (1983)).

The imprimatur of the Supreme Court on the application of the exclusionary rule has been confined to criminal trials,

---

search and therefore it was unreasonable under the Fourth Amendment.

and within those trials, to the prosecution's case in chief on the merits of guilt or innocence. Standing to invoke the rule has been limited to cases in which the prosecution seeks to use the fruits of an illegal search or seizure against the victim of the police misconduct. *Leon,* 468 U.S. at 910, 104 S.Ct. at 3413–14. However, "[e]ven defendants with standing to challenge the introduction in their criminal trials of unlawfully obtained evidence cannot prevent every conceivable use of such evidence." *Id.* Evidence inadmissible in the state's case in chief as secured in violation of the Fourth Amendment may be used to impeach a defendant's direct testimony. *Id.* (citing *Walder v. United States,* 347 U.S. 62, 74 S.Ct. 354, 98 L.Ed. 503 (1954) and other cases). And such evidence may be used to impeach statements made by a defendant in response to proper cross-examination reasonably suggested by the defendant's direct examination. *Leon* 468 U.S. at 910, 104 S.Ct. at 3414 (citing *United States v. Havens,* 446 U.S. 620, 627, 100 S.Ct. 1912, 1916, 64 L.Ed.2d 559 (1980)). The *Leon* opinion pointed out that the Court, when considering the use of evidence obtained in violation of the Fourth Amendment in the prosecution's case in chief, had declined to adopt a per se or "but for" rule that would render any evidence that came to light through a chain of causation that began with an illegal arrest. *Id.* 468 U.S. at 910–911, 104 S.Ct. at 3413–14 (citing *Brown v. Illinois,* 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975)). The Court has also held that a witness' testimony may be admitted even when his identity was discovered in an unconstitutional search. *Leon* 468 U.S. at 911, 104 S.Ct. at 3414 (citing *United States v. Ceccolini,* 435 U.S. 268, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978)). And in cases not involving the scope of the rule itself, the rule has been held inapplicable. Thus, the Court has not required suppression of the fruits of a search incident to an arrest made in good-faith reliance on a substantive criminal statute that subsequently was declared unconstitutional. *Leon* 468 U.S. at 911–912, 104 S.Ct. at 3414 (citing *Michigan v. DeFillippo,* 443 U.S. 31, 99 S.Ct. 2627, 61 L.Ed.2d 343 (1979)). In *Leon* itself the Court held that "evidence seized by officers

reasonably relying on a warrant issued by a detached and neutral magistrate ... should be admissible in the prosecution's case in chief," even though the warrant was later found to be defective. *Id.* 468 U.S. at 913, 104 S.Ct. at 3415. And we note that this Court, in *Logan v. State*, 289 Md. 460, 486, 425 A.2d 632 (1981), concluded that ordinarily the exclusionary rule "does not extend to the sentencing stage of a criminal cause."

■ "In the complex and turbulent history of the [exclusionary] rule, the Court has never applied it to exclude evidence from a civil proceeding, federal or state." *United States v. Janis*, 428 U.S. 433, 447, 96 S.Ct. 3021, 3029, 49 L.Ed.2d 1046 (1976). The Court explained this statement in the light of forfeiture proceedings in a footnote 17 in 428 U.S. at 447, 96 S.Ct. at 3029:

> The Court has applied the exclusionary rule in a proceeding for forfeiture of an article used in violation of the criminal law. *Plymouth Sedan v. Pennsylvania*, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). There it expressly relied on the fact that "forfeiture is clearly a penalty for the criminal offense" and "[i]t would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." *Id.*, at 701, 85 S.Ct., at 1251. See also *Boyd v. United States*, 116 U.S. 616, 634, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), where a forfeiture proceeding was characterized as "quasi-criminal."

In our revocation of probation proceedings the revocation is "not a penalty for the criminal offense," even though the new criminal offense may be the basis for the revocation. *See Howlett v. State*, 295 Md. at 424, 456 A.2d 375. The revocation is a civil action to determine whether the probationer is to remain on probation, not to punish his conduct for which probation may be revoked. *Cf. INS v. Lopez-Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 3483, 82

L.Ed.2d 778 (1984). For further support that *Plymouth Sedan v. Pennsylvania* provides no sound basis for applying the exclusionary rule to civil or administrative proceedings, *see* W. LaFave and J. Israel, *Criminal Procedure,* § 3.1(g). There it is pointed out that the courts which hold that the exclusionary rule applies in forfeiture proceedings rely on *Plymouth's* reasoning that the rule applies to proceedings which are "quasi-criminal" in that their object is to penalize for the commission of an offense against the law and could result in even greater punishment than the criminal prosecution. We iterate that this is not the situation in our revocation of probation proceedings. So it was that the Supreme Court confirmed in *Leon,* 468 U.S. at 909, 104 S.Ct. at 3413, that "[p]roposed extensions of the exclusionary rule to proceedings other than the criminal trial itself have been evaluated and rejected...."

The Court has held that a state prisoner who has been afforded a full and fair opportunity to litigate a Fourth Amendment claim may not obtain federal habeas corpus relief on the ground that unlawfully obtained evidence had been introduced at his trial. *Leon,* 468 U.S. at 909, 104 S.Ct. at 3413 (citing *Stone v. Powell,* 428 U.S. at 489–495, 96 S.Ct. at 3050–3052). The Court declined to allow grand jury witnesses to refuse to answer questions based on evidence obtained from an unlawful search or seizure. *Leon, id.* (citing *United States v. Calandra,* 414 U.S. at 348, 94 S.Ct. at 620). And it has permitted the use in federal civil proceedings of evidence illegally seized by state officials. *Leon, id.* (citing *United States v. Janis,* 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046). On the same day that *Leon* was decided, the Court held that the exclusionary rule did not apply in a deportation proceeding, a civil action, to bar the admission of the respondent's admission of illegal entry after an illegal arrest. *INS v. Lopez-Mendoza,* 468 U.S. 1032, 104 S.Ct. 3479, 82 L.Ed.2d 778.

## B

The Supreme Court has not had squarely before it the question whether the exclusionary rule applies to probation-

ary revocation proceedings. But its evaluation and rejection of the application of the rule to proceedings other than the criminal trial itself leads to a logical conclusion that, consistent with its other decisions, the rule would not generally apply to our revocation proceedings. We have learned, however, that it is not prudent to speculate about what the Supreme Court may do down the road, and we look for further support for our view.

■■■ The exclusionary rule is a remedial device and, accordingly, its application "has been restricted to those areas where its remedial objectives are thought to be most efficaciously served." *Leon,* 468 U.S. at 908, 104 S.Ct. at 3413 (quoting *Calandra,* 414 U.S. at 348, 94 S.Ct. at 620, and citing *Powell,* 428 U.S. at 486–487, 96 S.Ct. at 3048–49 and *Janis,* 428 U.S. at 447, 96 S.Ct. at 3028). "Close attention to those remedial objectives has characterized [the Court's] recent decisions concerning the scope of the Fourth Amendment exclusionary rule." *Leon, id.* Although, from time to time, various notions have been advanced as to the purpose of the rule, the Court "has established that the 'prime purpose' of the rule, if not the sole one, 'is to deter future unlawful police conduct.'" *Janis,* 428 U.S. at 446, 96 S.Ct. at 3028 (quoting *Calandra,* 414 U.S. at 347, 94 S.Ct. at 619, and citing *United States v. Peltier,* 422 U.S. 531, 536–539, 95 S.Ct. 2313, 2317–2318, 45 L.Ed.2d 374 (1975)).

> The rule is calculated to prevent, not to repair. Its purpose is to deter—to compel respect for the constitutional guaranty in the only effectively available way—by removing the incentive to disregard it. *Elkins v. United States,* 364 U.S. 206, 217, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

Accord, *Mapp,* 367 U.S. at 656, 81 S.Ct. at 1692; *Tehan v. United States ex rel Shott,* 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); *Terry v. Ohio,* 392 U.S. 1, 29, 88 S.Ct. 1868, 1884, 20 L.Ed.2d 889 (1968). In sum, the rule is a judicially created remedy with a broad deterrent purpose, designed to safeguard Fourth Amendment rights generally

through its deterrent effect. *Calandra*, 414 U.S. at 348, 94 S.Ct. at 620. "Jurists and scholars uniformly have recognized that the exclusionary rule imposes a substantial cost on the societal interest in law enforcement by its proscription of what concededly is relevant evidence." *Janis*, 428 U.S. at 448–449, 96 S.Ct. at 3029. In determining the application *vel non* of the rule in particular circumstances, the Supreme Court has adopted a balancing test. It weighs the costs and benefits of suppressing reliable physical evidence seized by officers, and this analytic approach has marked all of its decisions on the subject. We pointed out *supra* the interests of both the probationer and the State in revocation of probation proceedings. In making the decision whether to revoke probation the court must balance the competing interests of the community in safety with the rehabilitative goals of probation. Almost all of the federal courts have refused to exclude, in probation revocation proceedings, evidence obtained as a result of an illegal search and seizure. See cases collected in Annot., 30 A.L.R. Fed. 824 (1976 and October 1986 Supp.). A substantial majority of the state courts concerned with the "admissibility, in state probation revocation proceedings, of evidence obtained through illegal search and seizure," have generally held that evidence so obtained is admissible. See cases collected under that title in Annot., 77 A.L.R.3d 636 (1977 and August 1986 Supp.). The Court of Special Appeals referred to *Thompson v. United States*, 444 A.2d 972 (D.C.1982), which quoted *United States v. Winsett*, 518 F.2d 51 (9th Cir.1975), as illustrative. *Chase*, 68 Md.App. at 423, 511 A.2d 1128. *Thompson*, noting *Winsett's* belief that "it is extremely important that *all* reliable evidence shedding light on the probationer's conduct be available during probation revocation proceedings," 518 F.2d at 55 (emphasis in original), declared:

> In determining whether to apply the exclusionary rule to probation revocation proceedings we must weigh the potential benefit—deterrence of police misconduct—which would result against the potential harm to the function of the probation and probation revocation system that would

result from the exclusion of relevant evidence. 444 A.2d at 974.

*Thompson* followed the conclusion of "[t]he majority of jurisdictions ... that the deterrence which would result from applying the exclusionary rule in this context is outweighed by the need of the sentencing court for full and accurate information." *Id.* Hence the majority have "held the exclusionary rule inapplicable to probation revocation proceedings." *Id.*

Most of the law review articles, treatises and commentaries concerned with the exclusionary rule in this context appear to be in tune with the majority of the courts. *See, e.g.,* W. LaFave and J. Israel, *Criminal Procedure* § 3.1(g) (1985), 1 W. LaFave, *Search and Seizure* § 1.7 (2d ed. 1987); 1 W. Ringel, *Searches and Seizures, Arrests and Confessions,* § 3.6(d) (2d ed. 1986); Cole, *The Exclusionary Rule in Probation and Parole Revocation Proceedings: Some Observations on Deterrence and the "Imperative of Judicial Integrity",* 52 Chi.-Kent L.Rev. 21 (1975); Note, *The Exclusionary Rule in Parole Revocation Hearings: Deterring Official Infringement of Parolees' Fourth Amendment Rights,* 1979 B.Y.U.L.Rev. 161 (1979); Note, *The Exclusionary Rule in Probation and Parole Revocation: A Policy Appraisal,* 54 Tex.L.Rev. 1115 (1976); Note, *The Exclusionary Rule and Probation Revocation Proceedings,* 11 Val.U.L.Rev. 149 (1976); Note, *The Exclusionary Rule in Probation Revocation Hearings,* 19 Wake Forest L.Rev. 845 (1983). We are convinced by our scanning of such works that the holding of the majority of the courts that the exclusionary rule does not apply to revocation proceedings is the correct one; and we are not persuaded otherwise by the rationale of the minority of the courts and scholars who favor the application of the rule to such proceedings.

■ So it is that we adopt the following general rule: In revocation of probation proceedings, the exclusionary rule does not apply to bar evidence illegally seized by the police from the probationer.

We adopt this general rule because we are satisfied that the prime purpose of the rule—to deter police misconduct—would not be fulfilled by applying it to such proceedings. We are confident that its application would be subversive of the goals of the probation system. The harm to that system would far outweigh the marginal deterrent effect, if there be any at all by applying the rule. We find that our view is amply supported. It reflects the rationale of the decisions of the Supreme Court. It is in accord with the holdings of the majority of the courts in other jurisdictions, federal and state. It is in harmony with the better reasoned conclusions of the scholars.

## IV

We have seen that the validity of a revocation of probation proceeding is governed by the precepts of due process of law. Given compliance with those basic precepts outlined by *Morrissey*, 408 U.S. at 488–490, 92 S.Ct. at 2603–2605, and *Gagnon*, 411 U.S. at 786, 93 S.Ct. at 1761 (*see Romano*, 471 U.S. at 609–612, 105 S.Ct. at 2257–2558), and given that the police have illegally seized evidence from a probationer, we adopted *a general rule* that due process of law does not require that such evidence be suppressed at a revocation of probation hearing. In other words, the exclusionary rule does not ordinarily apply in such circumstances. "Where the official action was pursued in complete good faith ... the deterrence rationale loses much of its force," *Leon*, 468 U.S. at 919, 104 S.Ct. at 3418, *Michigan v. Tucker*, 417 U.S. 433, 447, 94 S.Ct. 2357, 2365, 41 L.Ed.2d 182 (1974), *Peltier*, 422 U.S. at 542, 95 S.Ct. at 2320, and the rule we have adopted serves to admit the evidence.

 Inherent in the characterization of our rule as a "general" one is the recognition that in particular circumstances the conduct of the police may be such as to call for the application of the exclusionary rule in revocation proceedings.

The deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the

defendant of some right. *Leon,* 468 U.S. at 919, 104 S.Ct. at 3418 (quoting *Tucker,* 417 U.S. at 447, 94 S.Ct. at 2365, which was reiterated in *Peltier,* 422 U.S. at 539, 95 S.Ct. at 2318).

Therefore, when the officer has acted in bad faith and not as a reasonable officer would and should act in similar circumstances, the evidence should, in any event, be suppressed. *Cf. Powell,* 428 U.S. at 539–540, 96 S.Ct. at 3073.

We are not willing to assume that every time a person subjected to what ultimately is held to be an illegal search and seizure by a police officer proves to be on probation, that the officer acted in bad faith. We observe that police officers who violate the constitutional rights of citizens are subject to both state and federal penalties, and we note that such police officers are further subject to civil liabilities. In today's litigious climate, that is no idle threat. Cole postulates:

> Since it is highly improbable that a particular suspect is a probationer, it is abundantly clear that the likelihood that constitutional police conduct will be fruitful is infinitely greater than is the likelihood that unconstitutionally obtained evidence will ever actually be available for use at a revocation hearing. 52 Chi.-Kent L.Rev. at 36–37.

Accordingly, Cole posits,

> it cannot realistically be supposed that a police officer, no matter how venal he may be, will refrain from obeying the law, thereby losing vital case-in-chief evidence, in the vain hope that in exchange he may obtain evidence which can only be used "should it subsequently appear that the victim of such conduct was a [probationer]." The contrary arguments blink reality. *Id.* (footnotes omitted).

▮ On the other hand, however, we did not adopt a rule that evidence obtained by an unreasonable search and seizure was per se admissible in revocation proceedings because we thought that it would derogate due process of law to presume conclusively that in such cases the police officer acted in good faith. Our rule affords the probationer the

opportunity, upon due challenge, to establish that the officer, in fact, acted in bad faith, and gives the State the opportunity to establish that the officer, in fact, acted in reasonable good faith. The fact is to be resolved, of course, by the hearing judge on a preponderance of the evidence. "Good faith—bad faith" in this context is not an esoteric concept. *Leon* and its progeny have deemed the good faith standard to be relevant and workable in relation to the exclusionary rule, and applied it. Thus, our general rule that the exclusionary rule does not apply to revocation of probation proceedings is modified to permit its application upon a showing that the police did not act in good faith in effecting the search and seizure.

■ The question remains how this showing is to be made. The Court of Special Appeals notion was that because it accepted as a general proposition that the exclusionary rule should not apply to revocation proceedings, the burden should be on the probationer to produce evidence showing a lack of good faith. *Chase*, 68 Md.App. at 426, 511 A.2d 1128. The court continued:

> Once the [probationer] produces sufficient credible evidence that the officer did not act in good faith, however, the State must rebut that evidence and bear the burden of persuading the court that there *was* good faith. *Id.* (emphasis in original).

The intermediate appellate court thought that such an "approach ... makes the rule both fair and reasonable." *Id.* So do we.

■ Evidence concerning the officer's conduct which would be sufficient to call upon the State to rebut is credible evidence indicating *prima facie* to the satisfaction of the hearing judge that the officer's actions were not in accord with reasonable law enforcement activities but were prompted by improper motives. As the Court of Special Appeals pointed out, the standard of good faith "encompasses all aspects of the officer's actions—how egregious

the violation was, whether the officer knew the person was on probation or parole, what the circumstances were that led to the seizure." *Id.* It is clear in *Leon* that good faith must be evaluated on an objective, not a subjective basis. It declares that the exclusionary rule should not be applied "to deter *objectively* reasonable law enforcement activity." 468 U.S. at 919, 104 S.Ct. at 3418 (emphasis added). *Leon* notes:

> We emphasize that the standard of reasonableness we adopt is an objective one. Many objections to a good-faith exception will turn on the subjective good faith of individual officers. "Grounding the modification in objective reasonableness, however, retains the value of the exclusionary rule as an incentive for the law enforcement profession as a whole to conduct themselves in accord with the Fourth Amendment." *Id.* n. 20 (citations omitted).

As we understand Chase's argument, he does not contend that the evidence found to have been illegally seized was prompted by bad faith on the part of the police. His basic claim, which we have rejected, is that the exclusionary rule applied in any event to revocation of probation proceedings. He urges that "a good faith standard can be justified only where the initial probable cause determination is made by a neutral and detached judicial officer." It is correct that, thus far, the Supreme Court has invoked the good faith exception to the exclusionary rule only when the police acted under color of a search warrant or a statute. But we repeat that the exception has been so considered only in the frame of reference of the State's case-in-chief at a criminal trial. We see nothing in *Leon* and its progeny which forestalls our view of the role good faith may play in the application of the exclusionary rule *vel non* to revocation proceedings when the sanctity of such proceedings are at stake and the purposes of probation are a vital consideration. A good faith evaluation of the officer's conduct, as we have pointed out, is in no wise restricted to his subjec-

tive belief that he acted on probable cause, and the motives behind his actions may be objectively determined.

In any event, as is our obligation when the infringement of a fundamental right is involved, we have made an independent constitutional appraisal of the entire record. We do not believe that the admission of the challenged evidence was fundamentally unfair, and thus due process of law was not thereby affronted. We see no sound reason why our general rule—that in revocation proceedings, the exclusionary rule does not apply to suppress evidence secured in violation of the Fourth Amendment—should not be invoked. We see no lack of good faith on the part of the officers in the circumstances here. Whether there was probable cause for Chase's arrest was a close call, at least arguable. One of the arresting officers not only did not know that he was on probation, but did not know him at all. There was no intimation that the other arresting officer knew Chase or was aware that he was on probation. There was no suggestion that the officers had theretofore harassed Chase. In short, there was no indication whatsoever that the arrest, search and seizure of Chase were other than a bona fide attempt to engage in proper law enforcement activity. We have seen that it was stipulated that the evidence would show that

> [i]n fact, the reason for the apprehension was in order to prosecute [Chase] for what [the officers] believed to be a drug violation at that point in time.

This belief was objectively understandable. The arrest was not an arbitrary action but a rational response, in no way invidiously motivated, to the situation facing the officers at the time.

We hold that the revocation hearing court did not err in refusing to apply the exclusionary rule and that the judgments of the Court of Special Appeals were not erroneous.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANT.