598 A.2d 475

**Hugh Hartman BALDWIN, Jr.**

v.

**STATE of Maryland.**

No. 7, Sept. Term, 1991.

Court of Appeals of Maryland.

Nov. 25, 1991.

---

John L. Kopolow, Asst. Public Defender and Stephen E. Harris, Public Defender, both on brief, Baltimore, for petitioner.

Diane E. Keller, Asst. Atty. Gen. and J. Joseph Curran, Jr., Atty. Gen., both on brief, Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, KARWACKI and ROBERT M. BELL, JJ.

MURPHY, Chief Judge.

The question presented is whether revocation of probation on the basis of an uncharged violation, to which no objection was entered at the probation revocation hearing, is reviewable by an appellate court.

## I.

On November 23, 1982, Hugh Hartman Baldwin, Jr. was found guilty in the Circuit Court for Cecil County of three violations of Maryland Code (1957, 1987 Repl.Vol.), Article 27, § 286, namely:

Count 5: possession of phencyclidine with intent to distribute;

Count 7: possession of equipment adopted for the production and sale of controlled dangerous substances; and

Count 8: maintaining a common nuisance.

Baldwin was sentenced to consecutive five-year terms of imprisonment on each count; the final year of each sentence was suspended and a five-year period of probation for each of the counts was imposed, to run concurrently and to commence upon Baldwin's release from confinement. The court imposed ten conditions of probation, one of which, Rule 2, required that Baldwin "[w]ork or attend school regularly as directed by his Probation Agent." Rule 9 required that Baldwin pay court costs of $70 and an attorney fee to the Office of the Public Defender, later fixed in the amount of $3,000. The Rule 9 condition of probation also specified that, as to count 5 only, Baldwin must pay a $15,000 fine. A special condition imposed by Rule 10 required that Baldwin reimburse the Public Defender for

services rendered, and pay the fine, within four years of his release from confinement.

Baldwin was released on probation on August 21, 1985. Subsequently, on October 24, 1989, he was charged with a violation of the probationary conditions imposed upon him by Rule 9. He was not charged with violating Rule 2, which required that he work or attend school regularly. In a narrative portion of the probation agent's report to the court, it was stated that Baldwin had chosen to remain unemployed throughout his probationary period. The report further opined that Baldwin could have obtained employment had he tried, and thereby gained the resources needed to comply with the requirements of Rule 9.

At the hearing, the probation agent testified that Baldwin was not employed "throughout his probation period, nor has he sought employment." The agent said that Baldwin believed that he was unemployable because of his bad reputation and always gave excuses for not applying for employment. The agent testified that Baldwin reported to her on a monthly basis, as required, and except for his failure to pay the money which he owed, which totalled $18,070, and to work regularly or attend school, he was in compliance with the conditions of his probation.

Baldwin testified that he was a self-employed photographer and handyman; that when released on probation, he tried to work five days a week but earned less than $1,000 a year; and that he was unable to satisfy the conditions of Rule 9 in view of his paltry income. He also testified that he owed the state and federal government over $9,000,000 in delinquent taxes and penalties. The evidence showed that Baldwin had not made any of the payments ordered by the court when it placed him on probation. Asked about his "net worth," Baldwin said, "I'm not worth anything ... don't own a car, don't own a truck. I don't have any tangible valuables." He also said that he was living with his parents and tried to pay $100 a month to them for rent, if he could.

Upon questioning Baldwin, the court ascertained that he held a college degree in social services; that he was thirty-six years of age; that before his convictions, he worked as an automotive parts supply clerk; and that upon his release from confinement, he had filed applications for employment but, because of his bad reputation, was not employed.

In closing argument, the State's Attorney said that payment of the $15,000 fine was a condition of probation only as to count 5, while the Public Defender and court costs obligations applied to all three counts. The prosecutor urged the court to find that Baldwin had violated his probation as to each of the three counts because he had made no payments. Moreover, the State argued that there was no evidence that Baldwin "sought employment making use of his degree in ... social studies," and he thereby failed to comply with the conditions of his probation.

Baldwin argued that he was indigent and could not, therefore, satisfy the monetary payment conditions of Rule 9.[1] He said that he maintained regular employment to the extent that he could find employment. He also spoke of a physical disability, from which he suffered, which made it difficult for him to work.

The court found that "the monetary conditions" of the probation order applied only to payment of the $15,000 fine imposed under count 5 and the $3,000 reimbursement to the Public Defender. It next said that the Rule 2 condition of probation that Baldwin "remain employed or go to school" applied to all counts and that Baldwin had not complied with this condition. The court remarked that Baldwin had no job during the probationary period, "no regular income, and made not one penny in payment, that is as deliberate and complete a violation of the conditions of probation as I can envision." Upon this foundation, the court next said that it had no difficulty in finding Baldwin in violation of the conditions of probation as to all three counts. Specifically,

---

1. Baldwin was ordered to pay $376.46 per month in fulfillment of the payment of his monetary obligation under Rule 9.

the court concluded that Baldwin violated "the monetary payment provisions as respects count 5, and also a violation of the remaining employed and/or going to school provision." As to counts 7 and 8, the court stated that there was "no monetary requirement attached to the probation periods in these counts, that violation of probation is failure to be employed or go to school."

The court revoked Baldwin's probation on all three counts. It reimposed the one-year suspended sentence as to each count, to run consecutively, for a total of three years. At this juncture, Baldwin interjected that the court was revoking his probation, notwithstanding his inability to pay. The court made no finding as to Baldwin's indigency. It stated its belief that Baldwin was capable of working and paying the obligations but chose not to do so. The court's revocation of Baldwin's probation, based in part on the uncharged violation of Rule 2, was not challenged at the hearing.

Baldwin appealed, arguing before the Court of Special Appeals that the trial court abused its discretion by revoking his probation on the basis of an uncharged violation, namely, that he failed to work regularly or attend school. The intermediate appellate court concluded, in an unreported opinion, that because Baldwin failed to object at the trial, the issue was waived and thus was not preserved for appellate review under Maryland Rule 8–131(a). We granted certiorari.

## II.

Consistent with the trial court's findings, Baldwin asserts that the monetary payment conditions of Rule 9 applied only to count 5, and not to counts 7 or 8. Thus, he says that because the State charged a violation only of Rule 9, applicable solely to count 5, the maximum sentence that could be reimposed for violating this condition is one year. Even though the trial court made no determination as to Baldwin's claim of indigency, he does not appear to contest

the court's revocation of his probation for nonpayment of his monetary obligations; indeed, it is likely that he has already served the one-year term for violation of this condition during the pendency of the appellate process.

Baldwin's focus is solely upon counts 7 and 8 and the reimposition of the consecutive one-year sentences on those counts. He argues that, while he voiced no objection to the court's decision revoking his probation as to those counts on the basis of the uncharged violation of Rule 2, the trial court plainly abused its discretion in so acting. He suggests that, because the petition to revoke his probation did not charge a violation of Rule 2, "proceedings as to that particular condition have not been initiated, and the trial court has no authority to render judgment on a claim of violation of that condition." Baldwin contends that, in these circumstances, an objection was unnecessary to preserve his right to appellate review of the court's determination to revoke his probation on the basis of an uncharged violation.

The State acknowledges that it should have charged Baldwin with violations of both Rules 2 and 9. It says, however, that the narrative portion of the probation agent's report afforded actual notice to Baldwin that his employment record would be at issue at the probation revocation hearing. According to the State, Baldwin's failure to object to inquiry into his failure to be regularly employed constituted a waiver of his right to appellate review. The State likens its failure to formally charge a violation of Rule 2, in its revocation petition, to a "procedural defect" in the initiation of the action which was waived by Baldwin's failure to object.

### III.

A violation of probation case is firmly established as a civil action. *Chase v. State,* 309 Md. 224, 239, 522 A.2d 1348 (1987). Consequently, as we said in that case, all of the panoply of rights usually associated with a criminal case

is not an incident of a violation of probation case. *Id.* at 239, 522 A.2d 1348. On the other hand, violation of probation proceedings often involves depriving a defendant of his liberty, a result that may be accomplished, consistent with the due process clause of the fourteenth amendment, only by providing "many, though not all, of the constitutional protections available to criminal defendants." *Hersch v. State*, 317 Md. 200, 207, 562 A.2d 1254 (1989). Thus, the Supreme Court has said that, at a constitutional minimum, due process considerations require that a probationer be afforded "written notice of the claimed violations of his probation." *Black v. Romano*, 471 U.S. 606, 612, 105 S.Ct. 2254, 2258, 85 L.Ed.2d 636 (1985). To the same effect, *see Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983); *Gagnon v. Scarpelli*, 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759, 36 L.Ed.2d 656 (1973); *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); *Adkins v. State*, 324 Md. 641, 655 n. 8, 598 A.2d 194, 201 n. 8 (1991).

Maryland Rule 4–347(a) requires that "[p]roceedings for revocation of probation shall be initiated by an order directing the issuance of a summons or warrant." It also requires that the order "state each condition of probation that the defendant is charged with having violated and the nature of the violation." Rule 4–347(e) requires that the scheduling of the probation revocation hearing "afford the defendant a reasonable opportunity to prepare a defense to the charges." *See also* Code (1987 Repl.Vol.), Article 27, § 642.

 As we see it, the probation agent's commentary in her report concerning Baldwin's failure to work is not the legal equivalent of a formal charge in the State's petition for revocation that Baldwin violated the conditions of Rule 2. In our view, due process considerations are not satisfied absent a more focused formal notification of the State's reliance on Rule 2. As stated in *Gagnon, supra,* 411 U.S. at 779, 93 S.Ct. at 1758, the legality of probation revocation

proceedings "is tested by fundamental fairness—the touchstone of due process." Consistent with this well-settled principle, our cases hold that a decision to revoke probation cannot be based, in whole or in part, on an improper ground. *See, e.g., Smith v. State,* 306 Md. 1, 7, 506 A.2d 1165 (1986); *Howlett v. State,* 295 Md. 419, 427, 456 A.2d 375 (1983); *Dean v. State,* 291 Md. 198, 202, 434 A.2d 552 (1981).

Maryland Rule 8–131(a) provides that an appellate court ordinarily will not decide any issue (except certain issues of jurisdiction) "unless it plainly appears by the record to have been raised in or decided by the trial court." The rule further provides that the Court "may decide such an issue if necessary or desirable to guide the trial court or to avoid the expense and delay of another appeal."

■ While it is true that constitutional rights may be waived if not timely asserted, *see, e.g., Hardaway v. State,* 317 Md. 160, 169, 562 A.2d 1234 (1989), the record in this case discloses that Baldwin had little opportunity to challenge the court's invocation of Rule 2 when, at the conclusion of the hearing, it revoked Baldwin's probation on Counts 7 and 8 based on that uncharged violation. It was not until after the court's decision was rendered that the court's use of Rule 2 to revoke probation became fully evident. Even though Baldwin did not object at that time, his inaction in this regard is not the equivalent of a knowing and intelligent waiver of his constitutional right to due process. We hold that the court's utilization of the uncharged violation of probation constituted error and that the issue may properly be asserted on appeal.

Indeed, the result reached by the intermediate appellate court in its unreported opinion in this case is directly contrary to its reported decision in *Mitchell v. State,* 58 Md.App. 113, 472 A.2d 494 (1984). There, as here, the trial court revoked probation, based on an uncharged violation. No objection was entered at that time by the probationer. The Court of Special Appeals found no merit in the State's

argument that there was a waiver. That it deemed the question properly before it for appellate review is evident from its reversal of the trial court's judgment. We reach the same result in this case.

JUDGMENT REVOKING PROBATION AS TO COUNTS 7 AND 8 VACATED; CASE REMANDED TO THE CIRCUIT COURT FOR CECIL COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE COUNTY COMMISSIONERS OF CECIL COUNTY.