## JACOBS ET AL. v. NEW YORK.

No. 660.   Decided June 12, 1967.

*Emile Z. Berman* for appellants.

*Frank S. Hogan* for appellee.

*Edward De Grazia* and *John R. Kramer* for the National Students Association, as *amicus curiae,* in support of appellants.

PER CURIAM.

The motion to dismiss is granted and the appeal is dismissed as moot.

MR. JUSTICE BRENNAN would affirm the judgment of the lower court.

MR. JUSTICE FORTAS would reverse the judgment of the lower court.

MR. CHIEF JUSTICE WARREN, dissenting.

I dissent from the Court's dismissal of this appeal as moot.   These appellants were convicted by a three-judge bench of the Criminal Court of New York City of violating § 1141 of the Penal Law of New York, which provides in pertinent part:

"1. A person who sells, lends, gives away, distributes, shows or transmutes . . . any obscene, lewd, lascivious, filthy, indecent, sadistic, masochistic . . . motion picture film . . . which may or may not require mechanical or other means to be

transmuted into auditory, visual or sensory representations of such character . . . .

"2. . . . Is guilty of a misdemeanor, and, upon conviction, shall be sentenced to not less than ten days nor more than one year imprisonment . . . ."

On August 7, 1964, appellants Jacobs and Mekas were sentenced to 60 days in the New York City Workhouse, with execution of the sentence suspended. Appellant Karpf received a suspended sentence.

In dismissing this appeal for mootness, the Court apparently bases its action upon the fact that under New York law, the maximum time during which appellants could have had their suspended sentences revoked and replaced by prison sentences was one year from the date of the original sentences. N. Y. Code Crim. Proc. § 470–a. The State argues that this appeal is moot because more than one year has run from August 7, 1964, and appellants are under no present threat of imprisonment. Moreover, the State contends that neither New York law nor federal law imposes any further penalty for conviction of the misdemeanor involved in this case.

I cannot accept this argument. The practical result of the Court's willingness to dismiss this appeal as moot is that States may insulate their convictions under laws raising constitutional questions from review on the merits by this Court by the simple expedient of a suspended sentence where a time limit for the imposition of an executed sentence is short enough to run before an appeal can be taken to this Court. A State could thus keep a person under continual threat of imprisonment without review by this Court of any constitutional objections to his convictions by a continued series of convictions and suspended sentences. By the time any single conviction could be brought to this Court, the defendant's jeopardy under that particular sentence

would be concluded. However, the defendant could still be oppressed by subsequent suspended sentences which would themselves be unreviewable by the time the defendant could bring his case to this Court. I cannot agree that the commands of the United States Constitution can be this easily suspended by the States. Moreover, this power, which under this dismissal can be exercised without constitutional restraint, gives the State a weapon which might in some cases be used to suppress constitutionally protected conduct. After a person has been convicted under a statute which limits his right of expression, his subsequent conduct will be significantly chilled by the conviction on his record. Particularly where, as in this case, the convictions stem from conduct which is directly in line with appellants' profession as movie exhibitors, they may justifiably fear that any future conduct running the danger of infringing the statute will be more harshly treated because of the previous unreviewed conviction. Who can doubt that a judge's reaction to another conviction under § 1141 of the New York Penal Law would not be colored by the fact of a prior conviction? For example, these appellants argue in this case that they should not be constitutionally convicted because their conduct demonstrates their good-faith belief that they were not exhibiting obscene material. They may have felt that even if a state judge did not accept their constitutional argument based on their good faith, he might at least give the appellants the most lenient sentence. However, once they have been convicted and have been unable to have the constitutionality of the conviction passed upon by this Court, their situation is radically different. Even if they have been convicted of engaging in what this Court might finally determine to be constitutionally protected conduct, they are likely to order their future conduct on the basis of the assumed validity of the previous convic-

tion.  When we are dealing with First Amendment freedoms, freedoms we have held require breathing space to survive, see *New York Times Co.* v. *Sullivan,* 376 U. S. 254 (1964), *NAACP* v. *Button,* 371 U. S. 415 (1963), we should be extremely slow to accept mootness doctrines which grant the States an unreviewable power to suppress modes of expression.

I believe the Court is straining the mootness doctrine and in doing so is bypassing important constitutional questions in the obscenity area which this Court has an obligation to decide.  In this case, we are presented with an opportunity for injecting some clarity into the problem of what constitutes obscenity, a problem which has become increasingly muddled and difficult for the federal and state courts and legislatures to understand since we first defined the reach of the First Amendment in this area in *Roth* v. *United States,* 354 U. S. 476 (1957).  The questions presented are not easy, but I am sure that it is our constitutional duty to grapple with them and to present to the country an understandable statement of how far the First Amendment restricts legislative attempts to control obscene material.  Similarly, the Court dismisses as moot the appeal in No. 993, *Tannenbaum* v. *New York, post,* p. 439, because a jail sentence was suspended and a fine has been paid.  That case raises the important question never addressed by this Court of the constitutionality of "variable obscenity" laws which restrict the sale of obscene materials to minors on the basis of definitions of obscenity drawn expressly with minors in mind.  While I do not express a view as to the merits of this question, I think the great importance of the question to the Nation, and the responsibility of this Court to elaborate the scope and meaning of the First Amendment, should require the Court to note jurisdiction and hear the case on the merits.  A similar strained conception of mootness resulting in a failure of decision on the merits

recalls the Court's avoidance of a constitutional decision in the short *per curiam* in *Parker* v. *Ellis,* 362 U. S. 574 (1960). I expressed the belief in that case, which I reaffirm here, that this Court has an obligation to decide, and not avoid, important constitutional questions which are concretely presented to it by litigants having adverse interests. If Congress had intended that our jurisdiction be discretionary in all cases, it would not have differentiated in the statutes defining our appellate jurisdiction between appeals and writs of certiorari.

As MR. JUSTICE DOUGLAS points out in his dissent to the dismissal for mootness in this case, there are additional reasons why this case should not be deemed moot. Appellants' film and equipment were seized by the police at the time of their arrests. Of course, if appellants were not convicted, or if their convictions were reversed, they would be entitled under state law to the return of their property. On the other hand, our dismissal leaves these convictions unchallenged, and appellants' film and equipment will be subject to forfeiture. N. Y. Penal Law § 1141–c, N. Y. Code Crim. Proc. § 22–a. Thus, appellants have a clear pecuniary interest in the outcome of this appeal. Appellants also point to the likelihood that these convictions will impair their ability to secure a license to operate a motion picture theater. Under the Administrative Code of the City of New York, which establishes a comprehensive system of licensing procedures, the Department of Licenses is charged with assuring that motion picture theatres are not offensive to "public morals." § B32–26.0. These convictions will surely affect appellants' ability to procure a license to exhibit motion pictures in the future.

Since I believe this appeal cannot be dismissed as moot, I believe the Court must consider the case on the merits. I am satisfied that these convictions should be affirmed. Under the standards set out by the Court in *Roth* v.

*United States,* 354 U. S. 476 (1957), this film is not within the protections of the First Amendment. We formulated the test in that case as being whether the material was utterly without social value, whether it went substantially beyond customary limits of candor in representing sexual matters, and whether "to the average person, applying contemporary community standards, the dominant theme of the material taken as a whole appeals to prurient interest." *Id.,* at 489. This film falls outside the range of expression protected by the First Amendment according to the criteria set out in *Roth.*

For the reasons I have given, I would consider this appeal on the merits and I would affirm these convictions.

MR. JUSTICE DOUGLAS, dissenting.

We have here two cases in which appellants have been convicted under a State's obscenity statutes. In No. 660, appellants were convicted of showing an allegedly obscene motion picture. They were given suspended sentences and the time during which the suspended sentences could have been revoked and prison sentences imposed has now passed. In No. 993, *post,* p. 439, appellant was convicted of selling an allegedly obscene magazine to a person under 18. He was sentenced to 30 days and fined $100. The fine has been paid and the sentence was suspended. The First Amendment issues in these cases are substantial. Nonetheless, they are dismissed as moot because the appellants are no longer subject to the custody of the State and in No. 993 the fine has been paid. The Court apparently believes this result to be commanded by our prior cases. I disagree.

The mootness doctrine is expressive of the need for antagonistic parties whose vigorous argument will sharpen the issues. It is part of the "case or controversy" requirement of Article III. *St. Pierre* v. *United States,* 319 U. S. 41, 42. But it is not so rigid as to defeat

substantial rights, nor so inflexible as to prevent this Court from facing serious constitutional questions. Thus, we have held that service of a sentence does not render a case moot where the conviction, if allowed to stand, will result in collateral disabilities such as a loss of civil rights. *Fiswick* v. *United States,* 329 U. S. 211; *United States* v. *Morgan,* 346 U. S. 502.

In the present cases, we are in the area of the First Amendment. Over and over again we have stressed that First Amendment rights need "breathing space to survive" (*NAACP* v. *Button,* 371 U. S. 415, 433); and we have been watchful lest coercive measures exercise an *in terrorem* effect which intimidates people from exercising their First Amendment rights. See, *e. g., Speiser* v. *Randall,* 357 U. S. 513; *NAACP* v. *Button, supra; Keyishian* v. *Board of Regents,* 385 U. S. 589. We have been mindful that "[t]he threat of sanctions may deter . . . almost as potently as the actual application of sanctions." *NAACP* v. *Button, supra,* at 433. Accordingly, we have modified traditional rules of standing and prematurity to fit the peculiarities necessary to ensure adequate protection of First Amendment rights. See *Dombrowski* v. *Pfister,* 380 U. S. 479.

The *in terrorem* effect of denying review to cases such as these because sentences have been suspended or short sentences served is obvious. Sentences for violations of obscenity statutes are often suspended and generally short. If those convicted cannot obtain ultimate review of such convictions, merely because of the shortness of the sentences and the slowness of the judicial process, many will choose to comply with what may be an invalid statute. Many may steer wide and refrain from showing or selling protected material. First Amendment rights are thus stifled. If a practice such as this were shown to exist, its *in terrorem* effect on all publishers would certainly be sufficiently clear as to give any

of them standing to bring an action for declaratory relief. Its *in terrorem* effect on a publisher who has actually felt the harsh impact of the law is so obvious that its continuing deterrent effect upon him should keep his case from becoming moot.

In No. 660, appellants' film and motion picture equipment were seized at the time of their arrests. They argue that at the conclusion of this proceeding they can bring an action to recover possession of the film and equipment. If their convictions are allowed to stand, along with the holding that the film is obscene, the film and equipment will be subject to forfeiture. They also argue that the department of licenses may suspend their motion picture theater license on the ground that they have shown obscene pictures. Perhaps they could relitigate the question of the film's obscenity in such proceedings. That is, of course, a matter of state law. But if appellants are correct, the convictions may entail sufficient collateral consequences that distinguish them from *St. Pierre* v. *United States, supra,* and bring them within the *Fiswick* and *Morgan* cases.

The questions of mootness loom so large in the setting of the First Amendment that they should at least be briefed and argued.