UNITED STATES

v.

**George Krekor PETROSIAN, 036 40 9460, Quartermaster Seaman Recruit (E–1), U. S. Navy.**

**NMCM 81 3605.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Ajudged 7 May 1981.
Decided 20 April 1982.

LT Lynn M. Maynard, JAGC, USN, Appellate Defense Counsel.

LCDR Michael R. McGuire, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and GORMLEY and MAY, JJ.

MAY, Judge:

Appellant was convicted pursuant to his pleas, by special court-martial, military judge sitting alone, of one specification of unauthorized absence of approximately four months, in violation of Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886; nine specifications of bad check offenses in violation of Article 123a, UCMJ, 10 U.S.C. § 923a; one specification of wrongful possession of an altered military identification card with the intent to defraud, in violation of Article 134, UCMJ, 10 U.S.C. § 934; and one specification of breaking restriction, also in violation of Article 134, UCMJ. He was sentenced to a bad-conduct discharge, confinement at hard labor for 6 months, and forfeiture of $330.00 per month for 6 months.

The sentence as ultimately approved by the supervisory authority, suspended confinement at hard labor in excess of 115 days and total forfeitures in excess of $800.00 for

a period of 1 year from the date of trial, 7 May 1981.

Appellant was confined for a total of 65 days prior to trial and was released after serving 36 days in post-trial confinement. As his remaining unsuspended confinement sentence was not deferred, he has completed the serving of the 115 days of unsuspended confinement. Article 57, UCMJ, 10 U.S.C. § 857. A period of 65 days remains suspended for the duration of the suspension period.

Appellant now assigns two errors:

I

APPELLANT'S GUILTY PLEA TO CHARGE III AND THE SPECIFICATION THEREUNDER WAS IMPROVIDENT.

II

SINCE THE COMBINATION OF PRETRIAL CONFINEMENT AND CONFINEMENT ADJUDGED IS GREATER THAN THE MAXIMUM CONFINEMENT AUTHORIZED AS PUNISHMENT AT A SPECIAL COURT–MARTIAL, THE CONVENING AUTHORITY AND SUPERVISORY AUTHORITY, IN VIEW OF THEIR DUTY TO APPROVE ONLY AN APPROPRIATE SENTENCE, ERRED TO THE PREJUDICE OF APPELLANT'S SUBSTANTIAL RIGHTS BY NOT TAKING CORRECTIVE ACTION.

We find no merit in either assignment and will address each assignment in turn.

I

Appellant was specifically charged at trial with the wrongful possession of an altered military identification card with the intent to defraud in violation of Article 134, UCMJ. The identification card in question was apparently properly issued to appellant and did represent initially a valid DD Form 2N (Active) identification card in the name of the appellant with the correct social security number of appellant appearing on the card.

The specific nature of the alleged alteration involved the placing of a pin hole in the last digit (zero) of appellant's social security number on the card. This alteration allegedly obscured the correct ending digit in order to facilitate cashing of personal checks utilizing fraudulent social security numbers.

Appellant now asserts that his plea to the charged offense was improvident in that he was charged with the wrongful possession of a "false" identification card and his statements presented during the providency inquiry only admitted the alteration of his own, valid, and properly issued military identification card, which under appellant's definition, could not then, be "false."

We do not agree. Our examination of the trial record, including the preferred charges, indicates that appellant was charged with the wrongful possession of an altered identification card. The trial record indicates that the military judge in explaining the elements of proof necessary to be established, stated, in part, that two of the five elements to be established were that the card was "false"; and that appellant had knowledge of the falsity of the card. Appellant acknowledged his understanding of those elements and during the subsequent providency inquiry stated, in regards to the alleged "falsity" of the card, that he altered the card by placing a pinhole in the center of the last zero in the social security number of the card. Appellant further stated that his purpose in so altering the card was to make it difficult to read the last digit of his social security number in order to facilitate the use of various invalid identification numbers in the cashing of checks which were the subject of the charges under Article 123a, UCMJ. Appellant further acknowledged that the identification card, so altered, bore a "false representation."

█ The providency inquiry related to this specific charge encompassed two and a half pages of the trial record. We find the appellant was clearly not misled as to the charged offenses by either the written spec-

ification or the advice related to the charged offense given by the trial judge. Those offenses commonly referred to as "pass offenses" under Article 134, UCMJ, are derived from federal statute, 18 U.S.C. § 499 (1970). *See United States v. Warthen*, 11 U.S.C.M.A. 93, 28 C.M.R. 317 (1959). Appellant's now proferred interpretation of the term "false" is too limited. We find that the valid identification card of appellant, as altered, and as acknowledged by appellant, for purposes of fraud, clearly assumed the character of falsity recognized by the law. *North American Accident Ins. Co. v. Tebbs*, 107 F.2d 853, 855 (10th Cir. 1939); *Sentinel Life Ins. Co. v. Blackmer*, 77 F.2d 347, 351–52 (10th Cir. 1935). *See also Gilbert v. United States*, 370 U.S. 650, 82 S.Ct. 1399, 8 L.Ed.2d 750 (1962). Therefore, we find no merit in appellant's first assignment of error.

## II

■ Appellate defense counsel has submitted a comprehensive and informative brief on the issue of maximum authorized confinement. Whatever may be the subsequent resolution of this issue in other cases apparently now before the Court of Military Appeals, we find here that the issue is moot.

We are aware that the concept of mootness is inapplicable as a blanket cloak against appellate review when the demands of justice or the allegation of collateral consequences is asserted by an appellant who has completed service of a criminal sentence. *See Levy v. Parker*, 396 U.S. 1204, 90 S.Ct. 1, 24 L.Ed.2d 25 (1969); *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Here, however, no assertion of collateral consequences has been raised by appellant. Instead, we are asked to apply policies applicable heretofore solely in federal civilian penal institutions. Appellant cites no persuasive authority to equate the sentence of a military court-martial and the attendant demands and needs of a military justice system to the far different needs and policies applicable in the civilian society. We reject appel-

lant's second assignment of error as moot. *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943). *See also Tannenbaum v. New York*, 388 U.S. 439, 87 S.Ct. 2107, 18 L.Ed.2d 1300 (1967); *Jacobs v. New York*, 388 U.S. 431, 87 S.Ct. 2098, 18 L.Ed.2d 1294 (1967). Although we view this issue as moot, we are compelled, given the efforts of both appellate defense and government counsel, to observe that pretrial confinement cannot simply be compared or equated to the policies, programs, and clearly distinct status of confinement at hard labor. We are aware of views expressed by the Court of Military Appeals that attach due process and equal protection concerns to this issue. *See United States v. Thomas*, 11 M.J. 315, 319, n.2 (C.M.A.1981). In our view, the distinctions inherent in the incarceration of military prisoners within the military correctional system are violative of neither due process nor equal protection standards.

We urge that, prior to assuming that policies considered appropriate for civilian penal populations are *a fortiori* desirable for application within the correctional system of our armed forces, a measured evaluation be conducted of military correctional programs. The correctional philosophy of the naval service is expressed in the department regulation issued by the Secretary of the Navy. *See* Article 58, UMCJ, 10 U.S.C. § 858.

### CORRECTIONAL PHILOSOPHY

1. The philosophy of naval corrections is based on recognition of the fact that, whether it be confinement or some other form, punishment alone is seldom corrective. Confinement is punishment because it denies the prisoner his liberty and separates him from his family, friends, and most normal activities. It means loss of status and disapproval of the individual offender by the military society. Confinement sharply limits the prisoner's privileges, his freedom of action, and opportunities for personal satisfaction. More significantly, it also lowers his self-respect.

2. A man is sentenced to confinement as punishment; he is not confined for punishment by any member of the staff or a confinement facility except as provided for by law and regulation. Hazing, harassment, unauthorized exercises, unnecessary restrictions and deprivations, and demeaning treatment serve no useful purpose and are prohibited. The friction they cause creates tension between staff and prisoners and leads to acts of aggression, retaliation, and serious individual or mass disturbances. Prisoners forced to comply with unreasonable, unnecessary and unmilitary routines lose respect for the authority which imposes them.

3. This manual sets forth procedures which ensure fair, impartial, and humane treatment of prisoners in compliance with law, regulation, and naval policy. It provides for a correctional program which includes counseling and a systematic evaluation of prisoners which is a prerequisite for intelligent decisions on custody, work, training, clemency, and disposition. The program includes work, military and physical training, an opportunity for self improvement, recreation, and religious participation. The goal is to restore the maximum number of prisoners to duty at the earliest time, better prepared to perform useful offense-free service, and thus salvage in part the money and effort spent in recruiting, training, and disciplining them.

Department of the Navy Corrections Man., art. 107.

We are not aware of any civilian penal system, federal or state, which incorporates in spirit or in fact, a correctional philosophy whose goal is to return former prisoners to offense-free service as a member of a disciplined, responsive, and effective military force. We further suspect that any informed analysis, including on-site visits, of the present correctional systems of the armed forces compared to those of the federal penal system would indicate that "civilianization" of the military correctional system would represent a deterioration of that responsive and effective system designed for uniquely military purposes. Contrary to some popular beliefs, the correctional programs of the armed forces are founded upon a recognition that individual deterrence and rehabilitation are achievable goals when adequate opportunity to apply credible military correctional techniques is available.

It should be recognized that the full range of correctional counseling, psychological services, and reinforcement of the military prisoner's readiness to assume the demands of military life are not applied to pretrial confinees. The physical and financial resources of military correctional programs are designed for application upon the adjudged and sentenced prisoner population. Pretrial confinees have no predictable time period of availability for such programs. In the naval service, only a sentenced prisoner receives mandatory application of the full range of correctional programs. All other categories of prisoners, adjudged and pretrial, must specifically request, in writing, such participation. *See* Navy Corrections Man., art. 404.3d. *See also United States v. Cagle*, 40 C.M.R. 550, 554, n.5 (A.C.M.R.1969).

We observe further that Congress has granted statutory power to the Secretary of the Navy to establish, organize, and administer military correctional facilities and to "usefully employ those offenders as he considers best for their health and reformation, with a view to their restoration to duty, enlistment for further service, or return to civilian life as useful citizens." 10 U.S.C. § 951(c) (1970). Congress has granted to the President power to establish the maximum punishment limits for court-martial sentences. 10 U.S.C. § 856 (1970). No assertion has been made that the military system of confinement sentencing is violative of Eighth Amendment constraints. Congress has not chosen to intervene in the presently established and effective military correctional system. We find no authority or justification to judicially intervene.

We therefore, after examining the entire record, conclude that the findings and sentence are correct in law and fact and that

no error materially prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings and sentence, as approved on review below, are affirmed.

Chief Judge CEDARBURG and Judge GORMLEY concur.