582 A.2d 597

**William ADKINS**

v.

**STATE of Maryland.**

**No. 321, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Dec. 4, 1990.

Mark Colvin, Asst. Public Defender (Alan H. Murrell, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Stuart O. Simms, State's Atty., for Baltimore City, on the brief), Baltimore, for appellee.

Submitted before MOYLAN and BISHOP, JJ., and JAMES S. GETTY, Associate Judge of the Court of Appeals (retired) Specially Assigned.

MOYLAN, Judge.

The appellant, William Adkins, was convicted on March 14, 1979, by Judge Milton Allen in the Circuit Court for Baltimore City of malicious destruction of property, unlawful carrying of a deadly weapon, and two counts of battery.

An eight-year prison sentence was suspended and the appellant was placed on probation for five years.

An arrest warrant was issued for the appellant on October 29, 1980, charging a violation of probation. The whereabouts of the appellant, however, were unknown. He had changed his address without notifying his probation officer. It was later learned, moreover, that he spent several years incarcerated for a federal offense. In any event, the arrest warrant for the violation of probation was served on him on September 11, 1989, when he was discovered at the Anne Arundel County Detention Center. On December 19, 1989, Judge John Prevas revoked the appellant's probation and sentenced him to serve eighteen months beginning on April 1, 1989. That back-dating of the sentence gave him credit for time already served.

■ The appellant now claims that the nine-year delay between the issuance of the warrant and the revocation hearing denied him due process of law. With commendable candor, appellant's counsel informs us that the entire eighteen-month sentence has been served, the appellant having been released on June 13, 1990. Under the circumstances, we dismiss the appeal as moot.

■ The consequences of an adjudication may be direct and/or collateral. The direct consequence of a violation of probation may be the revocation of that probation and the serving of the original sentence. The sentence in this case having been served, the direct consequence is beyond any earthly power to affect. In terms of direct consequences, the propriety of the revocation is, by definition, moot. Where a defendant is still vulnerable to possible incarceration for a probationary violation, of course, a mere change in the terms of probation would not render moot an appeal from the determination that the violation occurred. *Kupfer v. State*, 287 Md. 540, 543, 414 A.2d 907 (1980); *Maus v. State*, 311 Md. 85, 114 n. 17, 532 A.2d 1066 (1987). That, however, is not the situation here.

■ When a criminal conviction (as contrasted with a revocation of probation) is being appealed, on the other hand, there is ordinarily an exemption from foreclosure because of mootness on the ground that the sentence has been served. That is because the criminal conviction may carry with it "collateral legal disadvantages in the future," *Pollard v. United States*, 352 U.S. 354, 358, 77 S.Ct. 481, 484, 1 L.Ed.2d 393, 397 (1957), above and beyond the direct consequences of fine or imprisonment.

The collateral consequences of convictions may be disentitlement to the voting franchise or the holding of public office, the use of the conviction to impeach future testimonial credibility, and the use of the conviction to support enhanced punishment. *Cf. McMannis v. State*, 311 Md. 534, 538–539, 536 A.2d 652 (1988). In *Fiswick v. United States*, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946), the substantially injurious collateral consequences that rendered the appeal there non-moot were vulnerability to deportation and possible denial of naturalization.

In both *Tannenbaum v. New York*, 388 U.S. 439, 87 S.Ct. 2107, 18 L.Ed.2d 1300 (1967), and *Jacobs v. New York*, 388 U.S. 431, 87 S.Ct. 2098, 18 L.Ed.2d 1294 (1967), the Supreme Court dismissed as moot appeals from criminal convictions where the direct consequences of the convictions were already *faits accomplis* and where there was no demonstration by the defendants of any likely collateral consequences. In *Ginsberg v. New York*, 390 U.S. 629, 633 n. 2, 88 S.Ct. 1274, 1277 n. 2, 20 L.Ed.2d 195, 200–201 n. 2 (1968), the Supreme Court elaborated upon the *Tannenbaum* and *Jacobs* dismissals for mootness:

"In *Tannenbaum* there was no contention that the convictions under the now repealed § 484-i entailed any collateral consequences. In *Jacobs* the appeal was dismissed on motion of the State which alleged, *inter alia*, that New York law did not impose 'any further penalty upon conviction of the misdemeanor here in issue.' Appellant did not there show, or contend, that his license might be revoked for 'conviction of any crime.'"

In the *Ginsberg* case itself, on the other hand, the Supreme Court held that the case was not moot notwithstanding the fact that the criminal sentence had been suspended and the time period had run within which the judge was empowered to recall the defendant and reimpose the execution of the sentence. There, it was the conviction itself that was being appealed and it was established that the fact of conviction could lead to the collateral consequence of the defendant's having her license to engage in the luncheonette business being revoked. The Supreme Court observed, at 390 U.S. 633 n. 2, 88 S.Ct. 1277 n. 2:

> "Although *St. Pierre v. United States*, 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199, held that a criminal case had become moot when the petitioner finished serving his sentence before direct review in this Court, *St. Pierre* also recognized that the case would not have been moot had 'petitioner shown that under either state or federal law' further penalties or disabilities can be imposed on him as a result of the judgment which has now been satisfied.' ... The State of New York concedes in its brief to this Court addressed to mootness 'that certain disabilities do flow from the conviction.' The brief states that among these is 'the possibility of ineligibility for licensing under state and municipal license laws regulating various lawful occupations....' Since the argument, the parties advised the Court that, although this is the first time appellant has been convicted of any crime, this conviction might result in the revocation of the license required by municipal law as a prerequisite to engaging in the luncheonette business she carries on in Bellmore, New York. Bellmore is an 'unincorporated village' within the Town of Hempstead, Long Island.... The town has a licensing ordinance which provides that the 'Commissioner of Buildings ... may suspend or revoke any license issued, in his discretion, for ... (e) conviction of any crime.' ... In these circumstances the case is not moot since the conviction may entail collateral consequences sufficient to bring the case within the *St. Pierre*

exception. *See Fiswick v. United States."* (citations omitted).

Once the direct consequences (the sentence) of a conviction are in the past tense, it is only the possibility of future collateral consequences that save a case from mootness. The cause-and-effect relationship between the fact of conviction and possible future collateral consequences was made very clear in *United States v. Morgan,* 346 U.S. 502, 512–513, 74 S.Ct. 247, 253–254, 98 L.Ed. 248, 257 (1954):

"Although the term has been served, the results of the *conviction* may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this *conviction* was invalid." (emphasis supplied).

In *Carafas v. LaVallee,* 391 U.S. 234, 237–238, 88 S.Ct. 1556, 1559–1560, 20 L.Ed.2d 554, 558 (1968), the Supreme Court elaborated upon the variety of collateral legal consequences that could flow from a criminal conviction:

"It is clear that petitioner's cause is not moot. In consequence of his conviction, he cannot engage in certain businesses; he cannot serve as an official of a labor union for a specified period of time; he cannot vote in any election held in New York State; he cannot serve as a juror. Because of these *'disabilities or burdens* [which] *may flow from' petitioner's conviction,* he has 'a substantial stake in *the judgment of conviction* which survives the satisfaction of the sentence imposed on him.' ... On account of these 'collateral consequences,' the case is not moot." (footnotes and citation omitted) (emphasis supplied).

*See also Sibron v. New York,* 392 U.S. 40, 50–58, 88 S.Ct. 1889, 1896–1900, 20 L.Ed.2d 917, 927–932 (1968); *Street v. New York,* 394 U.S. 576, 579 n. 3, 89 S.Ct. 1354, 1359 n. 3, 22 L.Ed.2d 572, 578 n. 3 (1969); *Pennsylvania v. Mimms,* 434 U.S. 106, 108 n. 3, 98 S.Ct. 330, 332 n. 3, 54 L.Ed.2d 331, 335 n. 3 (1977).

In this case, the serving of the sentence as a result of the probation violation was but an aspect of the direct consequences that have become irrevocable history. There are, moreover, no collateral consequences that might accrue. It is the original conviction itself, here unchallenged, that would produce collateral consequences. The merely coincidental question of whether the sentence for that conviction was served as an inmate, as a parolee, or as a probationer has no bearing upon the collateral consequences.

The direct consequence of the revocation being beyond our power to influence and there being no collateral consequences, any consideration of the merits of the revocation would be no more than an advisory opinion.

APPEAL DISMISSED; COSTS TO BE PAID BY APPELLANT.