598 A.2d 194

**William ADKINS**

**v.**

**STATE of Maryland.**

**No. 26, Sept. Term, 1991.**

Court of Appeals of Maryland.

Nov. 13, 1991.

Mark Colvin, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for petitioner.

Thomas K. Clancy, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW, and ROBERT M. BELL, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired) specially assigned, J.

ROBERT M. BELL, Judge.

This case presents the single issue, whether an appeal from an order revoking a defendant's probation and reimposing the previously suspended sentence is rendered moot by that defendant's completing service of his sentence while the appeal is pending. The Court of Special Appeals believes that it is and, therefore, *sua sponte*, dismissed petitioner's (William Adkins') appeal. 85 Md.App. 224, 582 A.2d 597 (1990). We now reverse.

1.

Petitioner was convicted of malicious destruction of property, unlawfully carrying a deadly weapon, and two counts of battery. His eight year sentence was suspended in favor of five years probation. Although, a little more than a year later, he was charged with violating his probation and a warrant for his arrest was issued, it was not until almost nine years more had passed that petitioner was served with the charges and the arrest warrant. Having denied the charges,[1] he moved to dismiss them, arguing that "the nine

---

1. The violation of probation was predicated upon petitioner having violated conditions of probation as follows: 1) failure to report as

year delay between issuance of the warrant and the revocation hearing denied him due process of law." The motion to dismiss was denied. Following a hearing, he was found to have violated his probation, and the court revoked that probation, reimposing, with credit for time served, 18 months of the previously suspended sentence.

While his timely noted appeal to the Court of Special Appeals was pending,[2] petitioner was released from confinement, having served, as he indicated at oral argument before that court, "[the entire] eighteen-month sentence." 85 Md.App. at 226, 582 A.2d at 598. As a consequence, the intermediate appellate court held that the appeal was moot. It reasoned:

In this case, the serving of the sentence as a result of the probation violation was but an aspect of the direct consequences that have become irrevocable history. There are, moreover, no collateral consequences that might accrue. It is the original conviction itself, here unchallenged, that would produce collateral consequences. The merely coincidental question of whether the sentence for that conviction was served as an inmate, as a parolee, or as a probationer has no bearing upon the collateral consequences.

The direct consequences of the revocation being beyond our power to influence and there being no collateral consequences, any consideration of the merits of the revocation would be no more than an advisory opinion.

85 Md.App. at 230, 582 A.2d at 600. The court thus drew a distinction between a criminal conviction, from which flowed, it noted, future "collateral legal disadvantages,"

instructed; 2) failure to work or attend school regularly; 3) failure to obtain permission before changing his address; and 4) failure to pay restitution as ordered.

**2.** Pursuant to Ch. 233, Laws 1991, effective July 1, 1991, a probationer no longer has an absolute right of appeal from a circuit court order revoking probation; he or she must seek leave to appeal that order. Maryland Code (1974, 1989 Repl.Vol., 1991 Cum.Supp.), § 12–202(5) of the Courts and Judicial Proceedings Article.

and a violation of probation proceeding, from which no such consequences flowed. *Adkins*, 85 Md.App. at 227, 582 A.2d at 598, quoting *Pollard v. United States*, 352 U.S. 354, 358, 77 S.Ct. 481, 484, 1 L.Ed.2d 393, 397 (1957).

We issued the writ of certiorari in order that we might consider the important issue raised by petitioner.

2.

Petitioner argues that the lower appellate court erroneously concluded that the criminal conviction pursuant to which he was placed on probation, but not the finding of probation violation pursuant to which his probation was revoked, is productive of collateral legal consequences. It is not true, he asserts, that a violation of probation finding may have only direct consequences, *i.e.*, a new probationary term or service of the suspended sentence. He contends that even when the sentence imposed pursuant to the revocation has been fully served, the violation of probation finding still has, and may give rise to, collateral consequences sufficient to exempt an appeal from it being challenged as moot. Thus, petitioner maintains: "An adjudication that a probationer has violated his probation has substantial collateral consequences." He directs our attention to what he perceives to be at least some of them.

First, he maintains that a finding of violation of probation will have an impact upon any future contact he might have in the criminal justice system.[3] "In many cases the sentence will be more severe than it would otherwise be simply because a defendant has been previously adjudicated in

---

**3.** Under Maryland law, violation of probation proceedings consist of two parts: a fact-finding inquiry into whether the probationer has violated any of the terms of probation and an inquiry into whether the probation should be revoked, a matter left to the discretion of the trial judge. *See Wink v. State*, 317 Md. 330, 332, 563 A.2d 414, 415 (1989). A finding that the probationer has violated the terms of probation has significance because it is that finding that is considered in subsequent criminal proceedings. That finding is the violation of probation equivalent to a guilty finding in a criminal case. The revocation, which may involve reimposition of a previously suspended sentence, is the equivalent to the criminal case's sentence.

violation of his probation." [4] Second, a finding of probation violation may have an adverse impact upon parole eligibility should the probation violator again be convicted of a crime and sentenced to imprisonment. *See* COMAR 12.08.01.-18A(3)(a) (a factor to be considered by the Parole Commission is "[t]he offender's prior criminal and juvenile record and his response to prior incarceration, parole or probation, or both."). Maryland Code (1957, 1987 Repl.Vol.), Art. 27, § 638C(a) gives a sentencing court discretion to credit the time a defendant spent in custody for another offense against a sentence that a defendant is required to serve in the future. Thus, petitioner contends that, unless he is allowed to challenge the propriety of the instant violation finding and should he be convicted in the future of another offense and sentenced to imprisonment, he will not qualify for § 638C(a) credit.

Because petitioner has fully served the sentence imposed as a result of the probation violation adjudication, the State argues that, unless there are collateral consequences, the case is clearly moot. Unlike the intermediate appellate court, however, citing *Robbins v. Christianson*, 904 F.2d 492, 495 (9th Cir.1990), explicating *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982),[5] it acknowledges that an appeal of a finding of probation violation is

---

**4.** Specifically, petitioner points to the role that a finding of violation of probation plays in the Maryland Sentencing Guidelines scheme. A person who has never been convicted of violation of probation or who has successfully completed probation receives zero points while one who has been adjudicated in violation of probation will receive a "1", thus increasing the guidelines sentencing range. Similarly, petitioner points out that "sentencing judges routinely consider a defendant's prior probation history in fashioning appropriate sentences." Therefore, even without the guidelines, a sentencing judge may impose a harsher sentence when a defendant's record includes a conviction for violation of probation.

**5.** *Robbins v. Christianson,* 904 F.2d 492, 495 (9th Cir.1990) does not definitely hold, as the State implies, that the burden is on the accused to demonstrate actual harm. Rather, the court assumed that it was, presumably because it believed that the defendant had carried the burden.

not moot, even though the defendant has served his sentence, where that defendant demonstrates collateral consequences. This is to be contrasted with the situation in which the underlying conviction is being appealed, in which event, the existence of collateral consequences is presumed. *See Sibron v. New York*, 392 U.S. 40, 55, 88 S.Ct. 1889, 1898, 20 L.Ed.2d 917, 930 (1968). In the former case the State contends, to qualify as "actual collateral consequences," they must be shown to be "concrete and not speculative," characteristics applicable to a conviction, as opposed to a probation violation finding. Examples of concrete, non-speculative collateral consequences offered by the State are "disentitlement to the voting franchise or the holding of public office, the use of the conviction to impeach future testimonial credibility, and the use of the conviction to support enhanced punishment." *Adkins*, 85 Md.App. at 226, 582 A.2d at 599.

The State contends that, since petitioner's appeal challenged only "the propriety of how he was to serve his sentence, that is, whether Adkins should have been incarcerated or on probation," and not the underlying conviction, the collateral consequences petitioner offers to avoid mootness are speculative and non-statutory, the Court of Special Appeals properly dismissed the appeal.

Both the intermediate appellate court and the State draw an impermissible distinction between an appeal of the underlying conviction and an appeal of an adjudication of probation violation. There is no support in the case law for this distinction. Moreover, our examination of *Lane v. Williams*, 455 U.S. 624, 102 S.Ct. 1322, 71 L.Ed.2d 508 (1982), on which the State principally relies, convinces us that the State has misinterpreted its holding.

3.

The test of mootness is whether, when it is before the court, a case presents a controversy between the parties for which, by way of resolution, the court can fashion an effective remedy. *Robinson v. Lee*, 317 Md. 371, 375, 564 A.2d 395, 397 (1989); *State v. Peterson*, 315 Md. 73, 79–82,

553 A.2d 672, 675–77 (1989); *Attorney General v. AA School Bus,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979). Where there are no direct consequences, "a criminal case is moot only if it is shown that there is no possibility that any collateral legal consequences will be imposed on the basis of the challenged conviction." *Sibron v. New York,* 392 U.S. at 57, 88 S.Ct. at 190, 20 L.Ed.2d at 931–32; *Carafas v. LaValle,* 391 U.S. 234, 237, 88 S.Ct. 1556, 1559, 20 L.Ed.2d 554, 558 (1968).[6]

In *Lane,* the defendants pled guilty to burglary and were sentenced to a term of imprisonment, without, however, being told that, in addition to the term of imprisonment to which they had been sentenced, they would also have to serve a mandatory three years on parole. After their release from custody, they were returned to prison as parole violators, one of them because of a subsequent conviction. Each filed a petition for writ of habeas corpus alleging that, because he was not informed of the mandatory parole term, he was incarcerated in violation of the due process clause of the 14th Amendment. As relief, Williams sought an order "freeing him from the present control" of the warden and from "all future liability" under his original sentence. (Footnote omitted). 455 U.S. at 627, 102 S.Ct. at 1324, 71 L.Ed.2d at 512. Southall, the other defendant, sought his "immediate release." 455 U.S. at 628, 102 S.Ct. at 1325, 71 L.Ed.2d at 513. By the time the case reached the Supreme Court, both had been released from custody.

The Supreme Court held that "since respondents elected only to attack their sentences, and since those sentences expired during the course of these proceedings, this case is moot." 455 U.S. at 631, 102 S.Ct. at 1327, 71 L.Ed.2d at 515. Its reasoning is significant. The Court observed that

---

**6.** The appeal in that case was challenged as moot because, although Carafas was in custody when he applied for the writ of certiorari to contest the propriety of the use of evidence he believed was illegally seized against him, he had been released on parole and, ultimately, discharged from parole status when his sentence expired while the proceedings were pending in the appellate system.

there were two ways the defendants could have proceeded in their attempt to remedy the error they alleged in their guilty pleas. They could have sought: (1) to set aside their convictions and plead anew, or (2) relief in the nature of specific performance of the plea agreement as they understood it. 455 U.S. at 630, 102 S.Ct. at 1326, 71 L.Ed.2d at 514.

> If respondents had sought the opportunity to plead anew, this case would not be moot. Such relief would free respondents from all consequences flowing from their convictions, as well as subject them to reconviction with a possibly greater sentence.... Thus, a live controversy would remain to determine whether a constitutional violation in fact had occurred and whether respondents were entitled to relief that they sought. (citation and footnote omitted)

455 U.S. at 630–31, 102 S.Ct. at 1326, 71 L.Ed.2d at 514–15. On the other hand, because, during the pendency of the appeal, the only consequence they sought to remove expired, there was no further relief the court could give, *id.;* consequently, there was no longer a live controversy. 455 U.S. at 633, 102 S.Ct. at 1328, 71 L.Ed.2d at 516.

The Court of Appeals for the Seventh Circuit had held that the defendants' parole violations had sufficient collateral consequences as to avoid a mootness determination. The Supreme Court did not agree:

> The doctrine of *Carafas* and *Sibron* is not applicable in this case. No civil disabilities such as those present in *Carafas* result from a finding that an individual has violated parole. At most, certain nonstatutory consequences may occur; employment prospects, or the sentence imposed in a future criminal proceeding, could be affected ... the discretionary decisions that are made by an employer or a sentencing judge, however, are not governed by the *mere presence or absence of a recorded violation of probation;* these decisions may take into consideration, and are more directly influenced by, the underlying conduct that form the basis for the parole

violation. Any disabilities that flow from whatever respondents did to evoke revocation of parole are not removed—or even affected—by a District Court order that simply recites that their parole terms are "void."

Respondents have never attacked, on either substantive or procedural grounds, the finding that they violated the terms of their parole. Respondent Williams simply sought an order "freeing him from the present control" of the Warden and from "all future liability" under his original sentence; Southall sought his "immediate release" from custody. Through the mere passage of time, respondents have obtained all the relief that they sought. In these circumstances, no live controversy remains. (citations & footnotes omitted) (emphasis added)

455 U.S. at 632–33, 102 S.Ct. at 1327–28, 71 L.Ed.2d at 515–16.

The Court addressed the collateral consequences issue in a context different from that presented by the facts *sub judice*. Its comments must be considered in light of the relief the defendants sought. At no time did the defendants, as the Court pointed out, seek to do anything more than remove the consequences of the misinformation they received, *i.e.* the parole period, which, in turn, would void their incarceration. Therefore, the Court did not have to, and, thus, did not, decide whether, had the propriety of the finding of probation violation been raised, an appeal on that ground would have been rendered moot by the service of the sentence.

Cases applying *Lane* recognize the distinction drawn by that case. *See Cox v. McCarthy*, 829 F.2d 800, 803 (9th Cir.1987) (challenge to penalty only; remedy requested would not affect collateral consequences stemming from "record of petitioners' conduct"), *Aaron v. Pepperas*, 790 F.2d 1360, 1362 (9th Cir.1986) (since petitioner did not challenge validity of his conviction, no collateral consequences from fact that prison sentence set at particular length of time); *Adams v. Killeen*, 115 Idaho 1034, 772 P.2d 241, 242 (App.1989) (no collateral consequences where de-

fendant, who challenged only conditions of detention, was transferred from jail at which those conditions were imposed as result of jail disciplinary hearing); *State v. Jelle*, 201 Mont. 111, 651 P.2d 1257, 1259 (1982) (challenge to sentence only). *But see Robbins*, 904 F.2d at 496 (applying *Lane* where, in parole revocation context, the challenge was to the "finding of misconduct that caused his parole to be revoked or his sentence to be lengthened").

Others have held that the *Lane* rationale, when applied to factual situations similar to that *sub judice*, rendered moot probation violation appeals. *See Marshall v. District of Columbia*, 498 A.2d 190, 192 (D.C.1985); *Smith v. United States*, 454 A.2d 1354 (D.C.1983). *See also United States v. Sultani*, 704 F.2d 132, 133 (4th Cir.1983), which goes further than *Lane*. Although the defendant in *Sultani* contended on his appeal that the evidence on which his conviction was based was legally insufficient, 704 F.2d at 133, the court held:

> The sentence was imposed on January 6, 1982, and was fully served by the date on which this appeal was reached for argument. Defendant successfully completed the period of probation without further infraction of federal motor vehicle regulations, and so he is beyond the time that the jail sentence can be made active. We therefore dismiss his appeal as moot, because we perceive no subsequent collateral prejudice which defendant is suffering or will suffer....

Unlike the situation in *Lane*, in this case, facing a term of imprisonment of eight years upon violation and revocation of his probation, petitioner chose to deny the charged violations. Also, unlike *Lane*, and contrary to the State's argument here, he chose to contest any probation violation adjudication on procedural grounds. By presenting a due process challenge based upon inordinate delay, petitioner challenged not simply the sentence he ultimately received, but, as well, the propriety of there being any violation of probation proceeding at all. *See State v. Berry*, 287 Md. 491, 500, 413 A.2d 557, 562 (1980). *See also Beach v. State*,

75 Md.App. 431, 439–41, 541 A.2d 1012, 1015–16 (1988); *Boone v. State,* 55 Md.App. 663, 667, 465 A.2d 1195, 1198 (1983). While it is true, as the State points out, petitioner has not mounted an attack against his underlying convictions, it is not at all true that he has failed to contest the finding of violation of probation. A successful due process challenge by the petitioner would remove from his record any blemish of a violation of probation finding. On the other hand, if he is unsuccessful, that finding would remain and, more importantly, have a negative effect on subsequent proceedings, should petitioner again get into trouble with the law. In other words, it would have collateral consequences. *See Hahn v. Burke,* 430 F.2d 100, 102 (7th Cir.1970); *Hewett v. State of North Carolina,* 415 F.2d 1316, 1320–22 (4th Cir.1969); *Panko v. McCauley,* 473 F.Supp. 325, 326 (E.D.Wisc.1979); *People v. Seymour,* 53 Ill.App.3d 367, 11 Ill.Dec. 410, 411–12, 368 N.E.2d 1018, 1019–20 (1977). *See also Calkins v. May,* 97 Idaho 402, 545 P.2d 1008, 1009 (1976) (holding that collateral legal consequences flow from prison disciplinary action affecting the terms of the prisoner's present or future restraint); *Commonwealth v. Brown,* 23 Mass.App.Ct. 612, 504 N.E.2d 668, 670 (1987) (in which the Court recognized the differing views, since *Lane,* concerning whether the collateral consequences of a violation of probation finding are sufficient to avoid mootness, but chose to "pretermit" that question). Some of the collateral consequences recognized in these cases are quite like those applicable to substantive criminal convictions and referred to in Supreme Court cases on this point.

Thus, in *Carafas,* the collateral consequences of the defendant's convictions were that he was prohibited from: engaging in certain businesses; serving as a labor union official for a specified time; voting in New York State elections; and serving as a juror. 391 U.S. at 237, 88 S.Ct. at 1559, 20 L.Ed.2d at 558. These consequences, being statutory and rather concrete, are the type the State maintains should only be considered. *Sibron* presents a somewhat different picture.

Sibron was convicted of unlawful possession of heroin and sentenced to six months imprisonment. 392 U.S. at 44, 88 S.Ct. at 1893, 20 L.Ed.2d at 924. He appealed, challenging the legality of the search and the seizure, as well as the "stop-and-frisk" law, pursuant to which the search was conducted. *Id.* While his appeal was pending, Sibron completed service of his sentence. The Supreme Court concluded that the case was not moot because there was enough of a possibility of adverse legal collateral consequences to preserve the case "from ending 'ignominiously in the limbo of the mootness'". 392 U.S. at 55, 88 S.Ct. at 1899, 20 L.Ed.2d at 930, quoting *Parker v. Ellis,* 362 U.S. 574, 577, 80 S.Ct. 909, 911, 4 L.Ed.2d 963, 966 (1960) (dissenting opinion). It focused on two such collateral consequences: a statute which permitted Sibron's conviction to be used to impeach his character should he put it into issue in a future case and another statute requiring a trial judge to consider a prior conviction when sentencing for a subsequent conviction. 392 U.S. at 55–56, 88 S.Ct. at 1899, 20 L.Ed.2d at 930. Although statutory, neither presented a concrete certainty; particularly, as regards the former, the trial court's exercise of discretion is key—it could, but did not have to, consider the prior conviction in a future sentencing.

In tracing the development of the collateral consequences doctrine from its birth in *St. Pierre v. United States,* 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943),[7] the *Sibron* court discussed several of its precedents, which reached similar

---

**7.** Discussing the other exception to the mootness doctrine enunciated in *St. Pierre v. United States,* 319 U.S. 41, 63 S.Ct. 910, 87 L.Ed. 1199 (1943), the Court commented:

Many deep and abiding constitutional problems are encountered primarily at a level of "low visibility" in the criminal process—in the context of prosecutions for "minor" offenses which carry only short sentences. We do not believe that the Constitution contemplates that people deprived of constitutional rights at this level should be left utterly remediless and defenseless against repetitions of unconstitutional conduct. A State may not cut off federal review of whole classes of such cases by the simple expedient of a blanket

results. In *Fiswick v. United States,* 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed. 196 (1946), the Court held that, although he had served his sentence before an appellate decision was rendered, an alien's appeal of his conviction for conspiracy to defraud the United States was not moot. It reasoned: an " 'alien might be subject to deportation by having committed a crime of 'moral turpitude'—even though it had never been held (the court refused to hold) that the crime of which he was convicted fell into this category,' " 392 U.S. at 54, 88 S.Ct. at 1898, 20 L.Ed.2d at 929. Another consequence standing in the way of mootness was the possibility that the conviction might stand as an impediment to the accused being able to prove his "good moral character" should he subsequently wish to become an American citizen. *Id.*

The Court also referred to *United States v. Morgan,* 346 U.S. 502, 74 S.Ct. 247, 98 L.Ed. 248 (1954), and noted that:

> Although the term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties, civil rights may be affected. As the power to remedy an invalid sentence exists, we think, respondent is entitled to an opportunity to attempt to show that this conviction was invalid. (footnote omitted)

---

> denial of bail pending appeal. As *St. Pierre* clearly recognizes, the State may not effectively deny a convict access to its appellate court until he has been released and then argue that his case has been mooted by his failure to do what it alone prevented him from doing. (footnotes omitted)

*Sibron v. New York,* 392 U.S. 40, 52–53, 88 S.Ct. 1889, 1897, 20 L.Ed.2d 917, 929 (1968). Thus, where constitutional rights are involved and a defendant proceeds with due diligence to perfect his appeal due to the length of the sentence or discretionary rulings, and the appeal process cannot be completed prior to the service of the sentence, the case may not be held moot.

If the State is correct, it is quite possible that a defendant who has violated probation, and been found guilty of doing so, but who is again placed on probation, will have the right to appeal, while another, in the same situation except that he is sentenced to jail, may not be able to appeal. A 30 day sentence which is suspended in favor of three years probation may afford a defendant the right of appeal, while one of 30 days, where the court does not admit the defendant to bail, will almost always result in an appeal from it being declared moot.

346 U.S. at 512–13, 74 S.Ct. at 253, 98 L.Ed. at 257. *Morgan* makes clear that not all collateral legal consequences need be concrete, non-speculative, or statutory to have a preclusive effect on mootness. Indeed, only the possibility of collateral legal consequences is required, *see Pollard v. United States*, 352 U.S. at 358, 77 S.Ct. at 484, 1 L.Ed.2d at 397, a concept inconsistent with concreteness and non-speculation.

As in *Sibron* and *Morgan*, one of the collateral legal consequences of a finding of violation of probation is that "[s]ubsequent convictions may carry heavier penalties." *Morgan*, 346 U.S. at 512–13, 74 S.Ct. at 253, 98 L.Ed. at 257. Furthermore, the consequences proffered by petitioner are at least as concrete as those found viable in *Fiswick*. *See also Robbins*, in which the court found that the accused's prison record showing that he was disciplined for drug use "*may* hurt him in a subsequent criminal action [and, therefore,] does qualify as a collateral consequence" and that "*possible* loss of employment [due to that record] is sufficiently harmful to constitute a collateral consequence." 904 F.2d at 495, 496. (Emphasis added). Thus, there is no reason that the test of mootness in "a criminal case"—the possibility of collateral legal consequences—should not apply equally to an adjudication of violation of probation.

It is the violation of probation finding, rather than the service of the sentence, that will have collateral legal consequences. Just as the conviction for the underlying offense can be considered in connection with sentencing for a subsequent conviction, so, too, as we have seen, can the finding of violation of probation. *Hewett*, 415 F.2d at 1322; *Panko*, 473 F.Supp. at 325; *Turner v. State*, 5 Md.App. 332, 334, 247 A.2d 412–13 (1968). The collateral consequences of that finding, moreover, are often quite similar to those flowing from the underlying conviction. When, in each instance, the sentence has been served, there simply is no basis for holding that the appeal of the latter, but not the former, is moot. There is no meaningful way to distinguish between

the collateral consequences flowing from a conviction for a substantive crime, or the offense underlying the probation violation, and those flowing from a violation of probation adjudication.[8]

The factual difference between the case *sub judice* and *Lane* renders *Lane* inapposite and justifies a different view

---

**8.** Notwithstanding that it is usually docketed in the case of the substantive crime out of which it arose, a violation of probation case is "firmly established as a civil action...." *Chase v. State,* 309 Md. 224, 239, 522 A.2d 1348, 1355 (1987). Accordingly, all of the panoply of rights usually associated with a criminal case is not an incident of a violation of probation case. *Id. See also Howlett v. State,* 295 Md. 419, 425, 456 A.2d 375, 378–790 (1983). The State need not prove the violation beyond a reasonable doubt, only by a preponderance of the evidence. *Wink v. State,* 317 Md. 330, 341, 563 A.2d 414, 419 (1989). And since the proceedings are informal in nature, there need not be strict adherence to the rules of evidence nor need there be confrontation, in the same sense, and to the same extent, that it is required in a criminal case. *State v. Fuller,* 308 Md. 547, 553, 520 A.2d 1315, 1317–18 (1987).

On the other hand, violation of probation proceedings often involve depriving a defendant of his liberty, conditional though it may be, a result that may be accomplished, consistent with the due process clause of the 14th Amendment, only by providing "many, though not all, of the constitutional protections available to criminal defendants...." *Hersch v. State,* 317 Md. 200, 207, 562 A.2d 1254 (1989). *See also Morrissey v. Brewer,* 408 U.S. 471, 480–82, 92 S.Ct. 2593, 2599–2601, 33 L.Ed.2d 484 (1972); *Gagnon v. Scarpelli,* 411 U.S. 778, 781–82, 93 S.Ct. 1756, 1759–60, 36 L.Ed.2d 656, 661 (1973); *Black v. Romano,* 471 U.S. 606, 610–12, 105 S.Ct. 2254, 2257–58, 85 L.Ed.2d 636, 642–43 (1985); *Bearden v. Georgia,* 461 U.S. 660, 666, 103 S.Ct. 2064, 2069, 76 L.Ed.2d 221, 228 (1983). At a minimum, therefore:

The probationer is entitled to written notice of the claimed violations of his probation; disclosure of the evidence against him; an opportunity to be heard in person and to present witnesses and documentary evidence; a neutral hearing body; and a written statement written by the fact finder as to the evidence relied on and the reasons for revoking the probation.... The probationer is also entitled to cross-examine adverse witnesses, unless the hearing body specifically finds good cause for not allowing confrontation. Finally, the probationer has a right to the assistance of counsel in some circumstances. *Black,* 471 U.S. at 612, 105 S.Ct. at 2258, 85 L.Ed.2d at 642–43.

The right to counsel in violation of probation cases in Maryland is absolute. *State v. Bryan,* 284 Md. 152, 158, 395 A.2d 475, 479 (1978). Fundamental fairness and the beneficence of the due process clause should apply not just in the trial court, but in the appellate process as well.

of what constitutes collateral consequences, *see Brown*, 504 N.E.2d at 669–70, as well as a different result.[9]

We hold that the petitioner's appeal is not moot. Petitioner's appeal challenges the propriety of his having been tried for violation of probation. Because the finding, in that proceeding, that he violated probation will have the same, or similar, collateral legal consequences, as the underlying criminal conviction, the appeal of the probation violation finding, like the appeal of the underlying criminal conviction, is not rendered moot simply because petitioner has served the sentence imposed.

JUDGMENT REVERSED. CASE REMANDED TO THE COURT OF SPECIAL APPEALS FOR FURTHER PROCEEDINGS, CONSISTENT WITH THIS OPINION. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY MAYOR AND CITY COUNCIL OF BALTIMORE.

---

**9.** Even if *Lane* applied, the result would be the same. The collateral consequences of the possible use of this record of probation violation are, themselves, sufficient to avoid mootness. *See Robbins, supra,* 904 F.2d at 496.